■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v BENNIE POWELL, Appellant. — Appeal by defendant from a judgment of the Supreme Court, Kings County (Myerson, J.), rendered August 28, 1980, convicting him of

operating a motor vehicle while under the influence of alcohol as a felony, upon a jury verdict, and imposing sentence. Judgment reversed, on the law and as a matter of discretion in the interest of justice, and a new trial ordered. Defendant was accused of operating a motor vehicle while under the influence of alcohol as a felony shortly after midnight on March 2, 1978. At trial the People produced a civilian witness who testified to seeing a motor vehicle weaving from lane to lane on Myrtle Avenue in Brooklyn and then twice making a sudden maneuver that cut off oncoming vehicles and forced them to take evasive action in order to avoid a collision. The driver was slouched behind the wheel and was stopped by a police radio car. The witness said the male driver was gesticulating and weaving on exiting his vehicle. The arresting officer testified that the driver, whom he identified as defendant, was operating the vehicle without lights and made the maneuvers described by the civilian witness. The officer observed defendant conduct a fumbling search in response to his demand for production of his operator's license, vehicle registration and insurance card. Defendant's breath carried a very strong odor of alcohol. On voluntarily exiting the vehicle, defendant sagged and had to support himself by holding onto the vehicle. Defendant's speech was slurred, but he informed the officer that he was parking the vehicle and he had consumed only one beer. During transportation to the precinct, according to the officer, the odor of alcohol was so strong that the windows of the radio car were rolled down. During the ride defendant was informed of his rights, but he ignored the officer's request to acknowledge his understanding and willingness to speak and instead talked continuously to the effect that his rights were being violated. On arrival at the precinct, defendant gave two different years for his date of birth. During a strip search, the officer observed no tubes or anything protruding from his body. The prosecutor elicited from the arresting officer the further fact that he had asked defendant if he had insurance coverage and a license to operate the vehicle, but the court sustained defense counsel's objection to his follow-up question of whether the officer had ascertained whether defendant had ever had insurance or a license to operate the vehicle. The court reasoned that any such violations were irrelevant to the issue being tried. Another police officer testified that he had video taped defendant's refusal to submit to co-ordination tests at the precinct house. Specifically, the officer had asked defendant to "do some simple tests to see if your physical co-ordination is impaired", and told defendant, "[e]ach test will be explained to you", with the camera recording the proceeding. The officer further informed defendant that he had "a right to refuse to take this test, or stop at the time without penalty". Defendant asked him if the test was walking a straight line, but the officer interrupted him to demand his consent to "these tests". Defendant again asked if the tests were of the nature of walking a straight line or picking coins up off the floor. The officer said they were. Defendant thereupon said, "This I am aware of", but added that "I can't take it because my, my stomach is messed up. My legs are messed up from gunshot wounds because I walk funny and I urinate through a tube, and sometimes I cannot control my urine and I cannot control my bowels". The officer asked, "Is that a problem, is that a [sic] ileostomy"? and defendant replied, "Yes", and added that the problem, resulting from his being shot in Korea, would interfere with his walking a line or picking up coins. Defendant stated that this was the reason for his refusal to submit to the co-ordination tests. The videotape was entered in evidence at defense counsel's request after the court limited his choice to no admission, admission with redaction of defendant's explanation for his refusal to submit to the tests and admission without redaction subject to the People's right to submit medical evidence contradicting the explanation. In so ruling, the court noted on the record that, after a

viewing, it had concluded that the videotape "certainly has probative value" because "I think the statement made by this witness [the officer] and his — and my visual conception of the defendant while this tape was made could lead a jury to believe that he was not drunk". Furthermore, when asked if the jury could reasonably infer the opposite — that defendant *had* been drunk — the court replied, "I hardly think so", but declined to rule on defense counsel's motion to dismiss the case as a matter of law. The People's rebuttal consisted of the testimony of a medical expert who examined defendant two years after the arrest. His opinion was that defendant had never undergone an ileostomy and that his physical co-ordination, including his ability to pick objects up off the floor as demonstrated in his presence, was normal. The expert said he had observed a horizontal scar below defendant's breastbone and scars on his neck, left arm, right leg and both hips, which could have resulted from gunshot or shrapnel wounds. In his opinion, however, such wartime injuries would not have impaired defendant from walking a straight line or picking up coins at the time of his arrest. On cross-examination he admitted that he had no knowledge of defendant's medical history, that shrapnel might still be present in defendant's body, and that such shrapnel could cause severe pain, especially if he bent down in order to take the co-ordination test, but it would not prevent him from taking it. Defendant, he explained, had picked up an object during his examination not by bending from the waist, which defendant had told the witness was difficult, but by squatting and bending, at the witness' suggestion. The witness also said he could not determine if defendant had been using a catheter for urination at the time of arrest. In summation, defense counsel described the videotape of defendant after his arrest as "the best evidence in the case", pointing out that it was the officer and not defendant who had used the term "ileostomy" and arguing that the arresting officer had failed to observe the catheter claimed by defendant because he had not been looking for one during the strip search for weapons. Counsel also referred the jury to the officer's explanation on the videotape that failed to inform defendant that some parts of the co-ordination test that he had refused would not require him to bend or walk. The People's summation properly argued at several points that the jury could infer a consciousness of guilt on defendant's part from his refusal to submit to the co-ordination tests. But it went beyond this. First, the prosecutor asked the jury to consider defendant's lack of an operator's license, and the court, on defense counsel's request, instructed them that defendant was only charged with driving while intoxicated, but declined to grant a mistrial. Second, the prosecutor repeatedly insisted that defendant had admitted on the videotape that he was "fully acquainted with" co-ordination tests for persons accused of driving while intoxicated, even after the court remarked, without expressly instructing the jury, that defendant's familiarity was limited to the test of picking coins up off the floor. Furthermore, in charging the jury, the court failed to instruct them how to weigh defendant's refusal to submit to the co-ordination tests as evidence of a consciousness of guilt. The judgment must be reversed and a new trial ordered despite defense counsel's failure to take exception to the court's charge. It is apparent from the record that the prosecutor went beyond the evidence in the case to imply to the jury that defendant had no operator's license because of earlier arrests for driving while intoxicated that had introduced him to the co-ordination tests he refused to take. The transparent purpose of such argument was to persuade the jury that defendant had a propensity for drunk driving. This tactic was improper (see *People v Santarelli,* 49 NY2d 241; *People v Allweiss,* 48 NY2d 40), and, in view of the court's failure to instruct the jury on the use of defendant's refusal to submit to the co-ordination tests, the prejudice of the improper remark by

the prosecutor was not cured by the court's action during trial. Although no exception was taken to this aspect of the court's charge, we find, in exercising our discretion, that this error cannot be deemed harmless (see *People v Boone,* 71 AD2d 859, 860). It is true that the admission into evidence of defendant's refusal to submit to the sobriety test here cannot be deemed a violation of his Federal or State privilege against self incrimination on the basis that it was coerced. Inasmuch as there was probable cause to make a constitutionally valid search and seizure of defendant's person (e.g., co-ordination, breath or blood), it cannot be argued that the privilege is violated by a State statute (such as Vehicle and Traffic Law, § 1194, subd 4) that authorizes defendant to avoid the search upon penalty of the People's using such assertive conduct of calculated noncompliance at trial as circumstantial evidence of his consciousness of guilt. (See *South Dakota v Neville,* 459 US __, 103 S Ct 916; *People v Thomas,* 46 NY2d 100.) There is no constitutional violation in so using defendant's refusal even if defendant was not specifically warned that it could be used against him at trial (*South Dakota v Neville, supra*). This court, however, has ruled that the language of subdivision 4 of section 1194 of the Vehicle and Traffic Law authorizing a refusal requires the police "to warn defendant that his refusal to submit to a chemical test could be introduced into evidence at a subsequent trial" (*People v Boone, supra,* at p 860). Defendant at bar does not raise as an issue on his appeal the fact that the officer administering physical co-ordination tests (tests *not* covered by the statute) had told defendant exactly the opposite, i.e., that his refusal would be "without penalty". Instead, defendant criticizes the court's charges. In its decision in *South Dakota v Neville* (103 S Ct 916, 922, *supra*), the Supreme Court noted that it had cautioned in *Schmerber v California* (384 US 757, 765, n 9) that its analysis of the Fifth Amendment issue assumed that the sobriety test in issue was not "so *painful,* dangerous, or severe, or so violative of religious beliefs, that almost inevitably a person would prefer 'confession' ". (Emphasis supplied.) The New York Court of Appeals stated in *People v Thomas* (46 NY2d 100, 109, n 2, *supra*) that such innocent objections to sobriety testing "should be treated not as tending to establish any form of compulsion but rather as going to the probative worth of the evidence of refusal". Thus though *admissible,* the defendant's refusal to submit to co-ordination tests in this case on the ground that they would be painful because of his war wounds was nevertheless of *limited probative value* in proving circumstantially that defendant would have failed the tests. As the Court of Appeals has stated in respect of another example of assertive conduct, "[t]his court has always recognized the ambiguity of evidence of flight and insisted that the jury be closely instructed as to its weakness as an indication of guilt of the crime charged" (*People v Yazum,* 13 NY2d 302, 304). In the case under review the jury was not instructed at all in this regard. Given the strength of the favorable impression created by the videotape of defendant's conversation and conduct after arrest, and given the improprieties in the People's summation, we cannot say that the errors were harmless. We therefore reverse the judgment and direct a new trial. Damiani, J. P., Mangano, O'Connor and Brown, JJ., concur.