Sherwood L. Bestry, J.
Defendant was arrested on November 8, 1976, for a violation of the following sections of the Vehicle and Traffic Law: subdivision (e) of section 1180 (imprudent speed), section 401 (subd 1, par a) (operating an unregistered vehicle), section 1193-a (refusal of breath screening test) and subdivision 3 of section 1192 (driving while intoxicated).
Defendant moves to dismiss the charges of section 1193-a and subdivision 3 of section 1192, pursuant to CPL 170.35 on the grounds that the statutes defining the offenses are unconstitutional.
With respect to subdivision 3 of section 1192, defendant argues that the statute is so vague that it thereby deprives *220 defendant of due process, and is therefore violative of the Fourteenth Amendment to the United States Constitution.
As has been declared by various courts, time and again, the leading case on the subject of the definition of intoxication (when applied to the subject of operating a motor vehicle) is People v Weaver (188 App Div 395), decided in 1919.
Fifty-eight years ago the Legislature did not by statute define intoxication, and 58 years later it has still not done so.
The Appellate Division, Third Department (Cochrane, J.) formulated its own definition in People v Weaver (supra).
That definition was (p 400): "one shall not be affected by alcoholic beverage to such an extent as to impair his judgment or his ability to operate an automobile * * * intoxication * * * means such a condition as impairs to some extent, however slight it may be, the ability of a person to operate an automobile.”
This definition has been followed by the courts of this State down to the present time; and there is no difficulty with the definition. If the driver’s ability to operate is impaired, he is intoxicated. To determine whether there is an impairment, observational testimony is necessary at a trial. Furthermore, a driver is put on notice that if he imbibes alcoholic beverages to the extent that his ability is imparied, he violates the statute.
In 1960, the Legislature enacted chapter 184, and added a new offense, that of driving while one’s ability was impaired by the use of alcohol. Section 1192 of the Vehicle and Traffic Law was amended and the new offense was inserted as subdivision 1.
The new offense as differentiated from driving while intoxicated, was only a traffic infraction.
As stated in the statute and by this court in People v Seger (63 Misc 2d 921), there could be no conviction under subdivision 1 of section 1192, unless the defendant first submitted to a chemical test, and the results of such test showed 0.10% or more alcohol in the blood.
Observational testimony was insufficient. A chemical test was a necessity.
Subdivision 3 of section 1192 was added and provided that evidence of 0.10% or more of alcohol was prima facie evidence that defendant’s ability to operate was impaired.
Subdivision 3 retained the provision of the former statute *221 that if the chemical test showed 0.15% or more, that was prima facie evidence that the defendant was intoxicated; and 0.06% through and including 0.14% was relevant evidence on the question of intoxication.
Thus, at that point in time, there two offenses — one, a traffic infraction — driving while one’s ability was impaired by alcohol which could result in conviction only after a chemical test and, two, driving while intoxicated, a misdemeanor, which could result in a conviction based on observational testimony alone, or observational testimony buttressed by a chemical test.
Prior to the enactment of subdivision 1 of section 1192, juries were reluctant to convict a driver of the crime of driving while intoxicated, and by creating a less serious offense of driving while one’s ability was impaired, the Legislature made it possible, in theory, for prosecutors to obtain convictions.
Subdivision 1 provided a scientific, ascertainable basis for the trier of the facts, and was not in any sense vague.
However, the seeds for future problems arose in the choice of words by the Legislature, "ability * * * impaired by the consumption of alcohol”.
Ability impaired by the use of alcohol had been determined to mean driving while intoxicated in People v Weaver (188 App Div 395, supra), but the name of the offense prescribed by subdivision 1 of section 1192 was unimportant, in that there was a statutory standard. That is, there must be a chemical test, and the results must be no less than 0.10% of alcohol in the blood.
By chapter 275 of the Laws of 1970, section 1192 of the Vehicle and Traffic Law was repealed and an entirely new section 1192 was enacted. Subdivision 1 was shortened, and provided: "No person shall operate a motor vehicle while his ability to operate such vehicle is impaired by the consumption use of alcohol.” It will be noted that reference to a chemical test was eliminated in subdivision 1. A new subdivision 2 was created, which provided that no person should operate a motor vehicle while he has 0.15% or more by weight of alcohol in his blood, as determined by a chemical test. Neither the words "intoxicated” nor "impaired” were used in subdivision 2.
Thus, a new offense — a misdemeanor — of operating with *222 0.15% was thereby created. The offense consisted of having a certain minimum quantity of alcohol in the blood.
Subdivision 3 of the new section 1192 retained the old misdemeanor of driving while intoxicated.
A new section 1195, was enacted, by the same chapter. It retained the 0.10% or more as prima facie evidence of driving while one’s ability was impaired, by the consumption of alcohol. In addition for persons over 21 years of age, evidence of 0.06% through and including 0.09% was to be considered relevant evidence of a violation of subdivision 1. For persons under 21 years, 0.05% was to be given prima facie effect.
For intoxication, 0.10% or more (instead of 0.06% — 0.14%) now became relevant evidence but not prima facie evidence on the question of intoxication.
By the same chapter, section 1196 of the Vehicle and Traffic Law, reads as follows: "A driver may be convicted of a violation of subdivisions one, two or three of section eleven hundred ninety-two, notwithstanding that the charge laid before the court alleged a violation of subdivision two or three of section eleven hundred ninety-two, and regardless of whether or not such conviction is based on a plea of guilty.”
Chapter 275 of the Laws of 1970 created the problems with which we are now faced.
Subsequent amendments to sections 1192 and 1195 by chapter 495 of the Laws of 1971, and by chapter 450 of the Laws of 1972, and by chapter 248 of the Laws of 1974, merely changed the quantity requirements of alcohol content in the blood, but the basic statutes as enacted by the Laws of 1970, are unchanged.
The 1971 amendment amended subdivision 2, by reducing the mimimum illegal quantity of alcohol to 0.12%.
The Laws of 1971 amended section 1195 in that 0.10% was reduced to 0.08% as prima facie evidence of being impaired. The provision that 0.06% through and including 0.09% constituted relevant evidence of being impaired was reduced to 0.06% and 0.07%. All distinctions between persons under and over 21 years were deleted.
For intoxication, 0.08% or more now became relevant evidence, instead of 0.10%.
By the Laws of 1972, subdivision 2 of section 1192 was amended by reducing the minimum illegal quantity of alcohol from 0.12% to the present 0.10%.
*223 With respect to the question of being impaired, the subject of relevant evidence was deleted, but 0.08% was retained as the minimum quantity for prima facie evidence.
With respect to intoxication, all reference to minimum quantities as constituting relevant or prima facie evidence was deleted.
By the Laws of 1974, with respect to being impaired, relevant evidence was again inserted, and 0.08% and 0.09% was again the quantity.
Throughout the history of the State, 0.05% and less is prima facie evidence that a defendant is neither impaired nor intoxicated.
The purpose of tracing the foregoing history is to show that the Legislature was meticulous in delineating the quantitative requirements of alcohol in the blood between driving while intoxicated, driving while impaired, and driving with a certain proscribed amount of alcohol in the blood.
Section 1196, set out hereinabove, enacted in 1970 has created constitutional issues.
Making driving while impaired a lesser included offense of subdivision 2 of section 1192 creates no problems. Quantitative standards are set up for each offense. There are definitive boundaries and there is no vagueness.
Moreover, if the intent of the Legislature in establishing the criterion of relevant evidence to determine if a defendant was driving while impaired means that observational testimony, coupled with the evidentiary results of the chemical test, may be taken into consideration by the trier of the facts, that also poses no problems. There then is a statutory quantitative standard, which eliminates vagueness, between subdivisions 3 and 1 of section 1192 .
However, if section 1196 is interpreted to meant that a defendant who is charged with a violation of subdivision 3 of section 1192 and either refuses a chemical test, or in a rare instance, is not offered one, so that there is no evidence of the results of chemical test, can be convicted of either subdivision 3 of section 1192, or the lesser included offense of subdivision 1 of section 1192, then the statutes are vague. By virtue of the definition of intoxication set down in People v Weaver (188 App Div 395, supra), there is no distinction between intoxication and impairment. Therefore, due process under the Fourteenth Amendment to the United States Constitution would *224 be violated (Connally v General Constr. Co., 269 US 385; People v Firth, 3 NY2d 472).
In People v Farmer (36 NY2d 386), section 1196 was held constitutional, but the issues raised here were not addressed by the Court of Appeals. The issue before the court was whether a defendant charged with a violation of subdivision 3 of section 1192 only, even though a chemical test had been given, could be convicted of a violation of subdivision 2 of section 1192 even though not charged with the latter crime, pursuant to section 1196, constitutes a deprivation of due process.
The court found that even though subdivisions 1, 2 and 3 are separable offenses, a uniform traffic information charging a violation of subdivision 3 of section 1192 gives ample notice to a defendant, pursuant to section 1196, he faces the possibility of a conviction under subdivision 1 or 2 of section 1192.
The court ruled that the defendant was given notice of the possibility of the conviction of subdivision 2 of section 1192, by virtue of section 1196.
The issue before this court, at this time, is a different one.
Admittedly, the court in People v Farmer (supra, p 390) did state, "True, subdivisions 1, 2, and 3 of section 1192 proscribe separable offenses based upon the degree of impairment caused by alcohol ingestion”.
Did the court by that statement overrule the definition of intoxication as laid down by People v Weaver (188 App Div 395, supra)?
This court doesn’t think so.
The difference between the degree of impairment between subdivisions 2 and 1 of section 1192 is measured by a quantitative difference of alcohol in the blood. However, when observational testimony alone is used, what is the demarcation between "impairment and intoxication”.
Can we say that to be impaired means that the defendant is less drunk than if he were intoxicated, and, that to be intoxicated means that he is more drunk than if he were impaired? —We have so charged juries innumberable times, but have never felt satisfied nor comfortable with that statement.
Now, the issue is squarely before us. If one is drunk, he is intoxicated, and if he is intoxicated, his ability to operate a motor vehicle is impaired. As stated above, People v Weaver *225 (supra), held that however slight the impairment might be, he is intoxicated.
It is axiomatic that the rules of statutory construction require that if a statute is subject to two interpretations, one —constitutional, and the other — not, then the court should, if possible and without straining the meaning, render that interpretation which would sustain its constitutionality.
Therefore, this court finds that section 1196 of the Vehicle and Traffic Law means that a defendant charged with a violation of subdivision 3 of section 1192 can be found guilty of subdivision 1 of section 1192 only if there are chemical test results; and that the Legislature did not intend that one charged with a violation of subdivision 3 of section 1192 can be convicted of subdivision 1 of section 1192, absent chemical test results, upon a trial. We do not rule whether for plea negotiations, subdivision 1 is a proper lesser included offense, under the same conditions.
This court is not unmindful of the decisions in People v LaPlante (81 Misc 2d 34) and People v Jones (77 Misc 2d 33).
However, this court finds that as interpreted herein, section 1196 of the Vehicle and Traffic Law does not render subdivision 3 of section 1192 so vague as to constitute a violation of due process. Therefore, we find that subdivision 3 of section 1192 is constitutional.
The motion of the defendant is hereby denied.
With respect to the motion of defendant to dismiss the charge of section 1193-a, on the grounds that the statute violates the Fourteenth Amendment to the United States Constitution, defendant relies on People v Delaney (83 Misc 2d 576).
Section 1193-a requires a motorist to submit to a breath screening test if the vehicle he operated was involved in an accident, or if the vehicle violated any provision of the Vehicle and Traffic Law. Refusal on the part of the motorist constitutes a traffic infraction.
The motorist’s breath does not constitute communication nor testimony and is not protected by the Fifth Amendment. Compulsion which makes a suspect or accused the source of "real or physical” evidence does not violate the Fifth Amendment (Holt v United States, 218 US 245). Fingerprinting, photographing, measurements, etc., have been long held to be physical evidence and not communication.
*226 Schmerber v California (384 US 757) held that a defendant, arrested for driving while intoxicated, could not raise the issue of self incrimination, after a blood test, taken by a physician, under the direction of police officer, although the test was given over his refusal.
The court held that the extraction of the blood was a search and seizure, but one made incident to a lawful arrest.
Section 1193-a authorizes the police officer to demand a sample of breath after a violation of any provision of the Vehicle and Traffic Law.
Suppose a motorist is stopped for a violation of section 375 (subd 35, par [c]) (defective tire) or subdivision (b) of section 306 (no inspection certificate) and is arrested, can the demand for a breath sample be considered a search and seizure incident to a lawful arrest?
A search of the vehicle or of the defendant could not be made in such a situation, except "there are reasonable grounds for suspecting that the officer is in danger or there is probable cause for believing that the offender is guilty of a crime rather than merely a simple traffic infraction”. (People v Marsh, 20 NY2d 98, 101.)
If the officer after stopping the defendant, has reasonable cause to believe that the defendant has committed the crime of driving while intoxicated, he can arrest him, and make a search and seizure of the defendant’s breath after arresting him, by demanding a sample of the breath by means of a breath screening test. It would be a search and seizure, incident to a lawful arrest, and not constitutionally proscribed.
If the police officer demands the motorist give him a breath sample before arresting him, but after having probable cause to make the arrest, such search and seizure also would not be proscribed merely because the police officer is searching for evidence of a particular crime, committed — to wit driving while intoxicated. (Warden v Hayden, 387 US 294; Terry v Ohio, 392 US 1.)
However, if the police officer has no probable cause to make the arrest for driving while intoxicated, he may "in appropriate circumstances and in an appropriate manner approach a person for purposes of investigating possibly criminal behavior even though there is no probable cause to make an arrest” *227 (Terry v Ohio, supra, p 22). There, however, has to be "reasonable suspicion”.
The mere violation of the defective tire, or lack of an inspection certificate, would not in this court’s opinion give rise to the necessary suspicion required by Terry v Ohio (supra).
By virtue of the same reasoning, the mere happening of an accident does not of itself give rise to probable cause, or even suspicion of commission of the crime of driving while intoxicated.
On the other hand, while investigating an accident, the police officer may obtain "probable cause”, or at least the "necessary suspicion” to bring the fact situation within the purview of Terry v Ohio (supra). In that event, the search and seizure of the breath would not be an illegal search and seizure.
This court believes that a demand for a breath screening test under appropriate circumstances, bears the same relationship to a full scaled chemical test as a pat down, to determine if a suspect has a weapon, under the circumstances authorized by Terry v Ohio (supra), bears to a full scaled body search.
This court believes that in certain circumstances, the defendant’s compulsory submitting to the breath screening test, under penalty of a traffic infraction for refusal, would constitute a violation of his constitutional rights; while in other circumstances it would not.
Therefore, this court does not believe that section 1193-a is unconstitutional on its face, but would be unconstitutional if applied in certain factual situations.
Therefore, the motion of the defendant to dismiss section 1193-a is denied.