OPINION OF THE COURT
Jan H. Plumadore, J.
At about 11:18 p.m. on January 28, 1984, this defendant was involved in a vehicle/pedestrian accident in the Town of West-port which resulted in the death of Olive Anson. After preliminary on-site investigation by New York State Troopers Tempastelli and Carpenter, the defendant and his passenger were transported to the Westport State Police Station (some 5 to 10 minutes from the scene). Shortly after their arrival defendant was formally arrested at 11:58 p.m. and charged with violating Vehicle and Traffic Law § 1192 (3).
The defendant admits via his memorandum of law that he was promptly advised of both his Miranda and Vehicle and Traffic Law rights, as a result of which he called his then attorney. Counsel declined to allow his client to submit to a breath test, which refusal was communicated at 12:25 a.m. on January 29, 1984.
*469 At 1:13 a.m. Trooper Carpenter commenced his sworn telephonic application to acting Essex County Judge George Sever-son (Schenectady County Surrogate) for an order authorizing the taking of blood from the defendant under Vehicle and Traffic Law § 1194-a, which order was granted at 1:30 a.m.; it is not seriously contended that the order was improperly granted. The blood sample was drawn at 1:52 a.m. at the Elizabethtown Community Hospital. Later that morning the defendant was arraigned in Westport Town Court on a charge of violation of Vehicle and Traffic Law § 1192 (3).
No felony complaint was ever filed herein and the matter was presented directly to the June 1984 Essex County Grand Jury which returned indictment No. 12 alleging three counts of violations of subdivisions (3), (1) and (2) of section 1192, respectively. A submission of vehicular manslaughter was no-billed. He was arraigned thereon in Essex County Court on July 2, 1984.
The defendant’s omnibus motion is dated August 16,1984 and was received by the court clerk the same day.
The People’s answering affidavit, dated November 21, was received at the court’s chambers in Malone on November 23. A supplemental affidavit, drafted December 10, 1984 in apparent response to the court’s inquiry of November 29, was received at Malone on or about December 12. The court rendered its initial decision and order on January 2, 1985, as a result of which a suppression hearing was held in Elizabethtown on January 11.
The defendant’s memorandum of law in support of suppression, dated January 18, 1985, was received in Malone on January 22nd. Its principal contentions are:
(A) section 1194’s “within two hours of arrest” requirement applies to section 1194-a blood tests as well;
(B) that defendant was “under arrest” at the scene and thus the blood was taken beyond the prescribed two-hour period, and
(C) that the purported consent proffered by defendant’s then counsel immediately after the blood test was ordered was involuntary and invalid.
The People’s response thereto was dated and received January 31, 1985.
(A) I. THE TWO-HOUR REQUIREMENT
This court is of the opinion that the two-hour limitation period(s) of section 1194 (1) (1), (2) do not apply to tests ordered pursuant to section 1194-a.
*470 Nowhere in the text of section 1194-a is there a reference to a time limit within which either the application, the order or the chemical test must be made; nowhere are the words “two hours” used; in fact, in the five references to section 1194 found therein, there is not one reference to section 1194 (1) (1) or (2).
The first reference to section 1194 comes in section 1194-a (1) which says in essence that despite the fact that a person may refuse a test under section 1194, he or she cannot refuse when one is ordered pursuant to section 1194-a.
The second reference to section 1194 comes in section 1194-a (2) (d), specifically to its (section 1194’s) subdivision (2). This subdivision deals not with time limits but with the consequences to a motorist and duties of the “attending officer” when the motorist refuses the chemical test.
Section 1194-a (2) (b) (2) is also worthy of note at this point for its reference to a “breath test administered by a police officer in accordance with section eleven hundred ninety-three-a” (emphasis added). If the Legislature had meant to say “administered” pursuant to the terms of section 1194 (1) (2) in this context or section 1194-a (4), infra, they would have.
The third reference to section 1194 occurs in section 1194-a (3) (b) in the latter portion of the third sentence thereof: “?¿fter being placed under lawful arrest such person refused to submit to a chemical test in accordance with the provisions of such section eleven hundred ninety-four of this chapter or is unable to give his consent to such a test.” The term “lawful arrest” is unique to section 1194-a: section 1194 merely uses the term “placed under arrest.” Refusal, a term not found in section 1194 (1) (1) or (2), is unique in section 1194 to its subdivision (2) and is one of the final prerequisites necessary to set section 1194-o’s processes in motion. “[U]noble to give his consent” is the alternative final prerequisite (§ 1194-a [2] [d]) and is found nowhere in section 1194.
The fourth section 1194-a reference, subdivision (3) (d), to section 1194 is to its subdivision (7), which deals with who is qualified to take blood, liability or lack thereof, and testimonial competence.
Finally, the fifth section 1194-a reference, subdivision (4), to section 1194 is again to its subdivision (7).
As noted at the outset of this discussion, there are no time limits set forth in section 1194-a. The only reference to time in section 1194-a is in the second last sentence of subdivision (3) (d): “In all cases the order shall include * * * the date and time it *471 was issued.” Such a requirement is hardly surprising in view of the fact that these orders may well be issued ex parte over the telephone and are a mandate (subdivision [4]) that someone take a sample of the motorist’s blood.
This court must conclude that the two-hour period at issue herein (§ 1194 [1] [1]), that commencing at arrest, is no longer applicable once the motorist has refused to take a chemical test. By that statute’s very terms the police have two hours from arrest within which to administer an 1194 test. Once a motorist has refused, the process and the statute move on to subdivision (2) of section 1194. The officer need not wait until the two hours have almost expired to see if the motorist will change his mind (see, Matter of O’Dea v Tofany, 41 AD2d 888), nor are repeated refusals required (see, Matter of Geary v Commissioner of Motor Vehicles, 92 AD2d 38). The two-hour period is no longer a relevant consideration for purposes of section 1194-a.
This conclusion is of course at variance with that reached by the Honorable Seymour Lakritz (Sup Ct, Queens County) in People v D’Angelo (124 Misc 2d 1050). The opposite conclusion reached in D’Angelo was based solely on the “Memorandum of Legislative Representative of City of New York” (1983 McKinney’s Session Laws of NY, ch 481, p 2569) wherein it is stated that any section 1194-a chemical test “may be administered only in accordance with existing guidelines in Section 1194 of the Vehicle and Traffic Law” (language identical to that found in the Assembly Memorandum in Support). As is apparent from the within analysis, it is this court’s conclusion that such is not the case (with the exception of § 1194 [7]; see, § 1194-a [3] [d]; [4] as indicated supra).
The within analysis finds additional support in the text of section 1194-a, specifically subdivisions (2), (3) (b), (d); (4) (the latter two as noted supra). The statute goes to great lengths to list the criteria that must be satisfied, by cross reference to section 1193-a, section 1194 (2) and those it sets forth, before an order may be granted. It then specifically states that the test must be administered “in accordance with the provisions of subdivision seven of” section 1194 (§ 1194-a [3] [d]; see also, § 1194-a [4]). Again, if the Legislature had meant to include the two-hour time limits of section 1194 (1) (1), (2) (which is by no means clear from either of city representative’s or the assembly’s memoranda) within section 1194-o’s proscriptions and prescriptions, they would have done so.
Section 1194-a, then, is a statutory creature existing entirely separate and distinct from section 1194. It borrows in part from *472 it, relates back to it (in the form of the references in § 1194 [2] to an 1194-a order), and only becomes operative when, among other things, there has (for our purposes) been a refusal.
One final note on the legislative history of section 1194-a. As noted, the Memoranda of the Representative of the City of New York and the Assembly lend dubious support to the proposition that section 1194’s two-hour requirements also apply to section 1194-a ordered tests. The only other published memorandum of which this court is aware, the Governor’s Memorandum — “Compulsory Chemical Tests for Intoxication” (1983 McKinney’s Session Laws of NY, ch 481, p 2776), lends it no support.
In summary the court thus concludes that while tests under section 1194 must be taken within two hours of arrest to be admissible, tests taken under section 1194-a need not be.
II. ADMISSIBILITY OF THE TEST RESULTS UNDER SECTION 1194-A
While this issue was not squarely raised either on the papers or at the hearing, it was by the court’s perusal of the Assembly Memorandum of Support (part of the Governor’s bill jacket). Again, the quote in this regard in the city representative’s memorandum — “the evidence derived therefrom [chemical tests] may only be used in the prosecution of a vehicular assault or homicide” (emphasis supplied; 1983 McKinney’s Session Laws of NY, ch 481, p 2569) — is taken directly from the Assembly Memorandum. The Assembly Memorandum goes on at length to describe how People v Moselle (57 NY2d 97) effectively negated the taking of blood, with or without consent under the authority of Schmerber v California (384 US 757), in Penal Law prosecutions, and how and why this statute is intended to remedy that specific problem.
The Legislature, by the way they enacted the Laws of 1983 (ch 481), made certain there could be no mistake about their intent: they did not include an 1194-a test in Vehicle and Traffic Law § 1195 (1) as a test whose results are admissible in an 1192 prosecution. If, when chapter 481 was enacted creating section 1194-a, amending section 1195 by adding a subdivision (3) (cross-referencing CPL art 710), amending section 1194, CPL 240.40 and 710.20, the Legislature had meant for such evidence to be admissible in section 1192 prosecutions as, for example, section 1194 original consent test results are, it could have said so. As is readily apparent from the Assembly Memorandum, it specifically chose not to.
This case is solely a Vehicle and Traffic Law prosecution. The defendant was arrested on January 28, 1984 and arraigned in *473 the Town Court of Westport on a charge of violating section 1192 (3). No felony complaint was ever filed and, when the entire matter was presented to the June 1984 Essex County Grand Jury, that body apparently no-billed any charge of vehicular manslaughter or criminally negligent homicide. This, of course, is surmise on the court’s part, for the court has not been asked to review the Grand Jury minutes. This development left the defendant in essentially the same position after indictment as he was on January 28, 1984: charged with at most a misdemeanor level violation of section 1192.
Since such is the case, the test results insofar as they were ordered under section 1194-a cannot be used in this prosecution.
(b) time of arrest
The discussion in (A) II, supra, would obviously be dispositive were it not for the issue of the purported consent which followed on the heels of the court order but before the actual taking of the blood. Since that is in issue, the time of arrest becomes important as well.
The defendant was arrested at 11:58 p.m. at the Westport State Police Station. The test, as pointed out in the People’s January 31 response, is not what the officers and the defendant may have thought at the time but whether or not a reasonable person, innocent of any crime, would have thought had he been in defendant’s position (People v Yukl, 25 NY2d 585).
A reasonable innocent person, having just struck and killed an elderly woman at about 11:18 p.m., would not, under the circumstances testified to herein, have considered himself in custody/under arrest until told he/she was at the station.
Neither trooper said or did anything to Mr. Morse to indicate he was in custody: he was never ordered to “stop”, “come here” or “go there”; he was not constantly shepherded at the scene; he was not taken/led to the patrol car (it was decided that they — the troopers, himself and his passenger — would be going to the station and, in response to his question, that they would all go in the patrol car); he was not handcuffed; he was not questioned to any meaningful degree beyond the normal accident scene pedigree information.
Stated another way, a reasonable innocent person under these circumstances — involved in a fatal collision, when “asked’Vinvolved-in-the-decision to go to the station, along with his passenger — would not have considered himself in custody until he was told he was under arrest at the station at 11:58 p.m.
To hold otherwise under these circumstances would be to give credence to defendant’s apparent position that he was “entitled” *474 to believe himself under lawful arrest at the scene because the officers believed (rightly) they then had probable cause to arrest him, even though they did not formally do so. Defendants have no “right” to be, or consider themselves to be, under arrest at the earliest possible moment (see, e.g., United States v Waltzer, 528 F Supp 646, affd 682 F2d 370; Hoffa v United States, 385 US 293; accord, Matter of Abe A., 56 NY2d 288).
Since the arrest is hereby found to have taken place at 11:58 p.m. on January 28, 1984, it follows that the blood was timely drawn at 1:52 a.m. on January 29, 1984.
(C) CONSENT
The fact that the blood was timely drawn, however, does not (yet) mean the results are admissible for, as we have seen, they certainly are not under section 1194-a. Admissibility must be determined based on the legitimacy of the purported consent which took place between the time the order was granted and the time the blood was drawn.
Under other circumstances this court might conclude that the bare signing of the hospital’s consent form, without more, would be insufficient to constitute an 1194 consent. The reason for this conclusion is that to give effect to such a procedure would be to say that, thanks to the hospital’s requirements, the People could bootstrap themselves around section 1194-o’s obvious proscription.
Such is not the case herein, however. Trooper Tempastelli testified that, after the order was issued, Trooper Carpenter reread defendant his Miranda and Vehicle and Traffic Law rights and informed him of the order and the fact that they were going to draw blood. This prompted an inquiry from defendant’s attorney, in words or substance, that “we have another chance or opportunity at this time to consent or refuse?” to which Carpenter replied “yes, it is your option again.” Defense counsel’s reply to that was “well, we consent.”
Defendant claims this consent was coerced by the court order. It is difficult to see how he arrives at this conclusion. Everyone involved then assumed that since a court order had already been issued the defendant’s consent was immaterial and unnecessary. Therefore, there would be no motivation to coerce it.
The defense also contends that the reason the consent was given was to head off the possibility of an unseemly struggle. This, if assumed to be true, was considerate but is irrelevant (Vehicle and Traffic Law § 1194-a [1]: the defendant may not refuse).
*475 The next contention is that defendant was not thereby consenting to a search within the context of US Constitution 4th Amendment and NY Constitution, article I, § 12. In this he may well be factually and legally correct, for such a consent (to “search”) is not required: “it is well established that even a compelled chemical test to determine blood-alcohol content does not violate the constitutional rights of a motor vehicle operator (see Schmerber v California, 384 US 757; People v Kates, 53 NY2d 591, 594; People v Thomas, supra). Because rights of a constitutional dimension are not involved, cases concerning the voluntariness of a person’s consent to search, which does involve constitutional rights (e.g. US Const, 4th Arndt; NY Const, art I, § 12), are not controlling” (People v Hochheimer, 119 Misc 2d 344, 353). “When an automobile accident results in death or serious physical injury, however, a drunk driver may be guilty of a homicide or assault under the Penal Law. Clearly fear of a six month license revocation is inadequate incentive to persuade a driver to part with evidence so crucial to the prosecution” (Assembly Memorandum in Support, p 2). Once the order has been issued, however, the six-month revocation is no longer “inadequate incentive.” Instead it becomes a liability to be avoided, at no real cost to a motorist facing or likely to face Penal Law prosecution for serious felonies, by offering up a timely section 1194 (1) consent. This is the most likely reason any defendant or his counsel, cognizant of the time factor as the attorney testified, would consent at this stage.
The defendant and his attorney had ample time to and did communicate at both the station and the hospital and were never prevented from conversing; indeed they were together from shortly before the refusal at 12:25 a.m. on. The defendant did not protest, either when his attorney offered the consent on his behalf or, in writing or otherwise, when he signed the hospital’s form, nor has he made any claim that he was so intoxicated or confused that he knew not what he did.
In light of the above, and the principles reiterated in Hochheimer (supra), there is no merit to defendant’s claim that his attorney was the only one who actively “consented” and that therefore there was no valid consent. As noted in Hochheimer, this is not a consent-to-search matter involving constitutional rights. Nor is it something required by statute or case law to be personally waived by the defendant {see, e.g., CPL 190.45, 190.20 and 340.50).
Accordingly, this contention is also without merit and the consent is hereby found to be valid.
*476 Since the consent and test occurred within the two-hour period and is otherwise valid under section 1194, the results are therefore admissible in the section 1192 prosecution at bar.
Defendant’s motion to suppress the blood test results and dismiss the third count of the indictment is hereby ordered denied.