OPINION OF THE COURT
Donald Grajales, J.
The defendant moves for an order suppressing statements and any evidence of blood alcohol tests administered to him at the time of his arrest, for the following reasons:
1) The blood was not drawn within two hours of the granting of an order allowing the police to draw defendant’s blood, as required by Vehicle and Traffic Law § 1194;
2) The police and District Attorney’s office failed to follow the procedure set forth in Vehicle and Traffic Law § 1194-a for an oral application and order compelling the submission to a chemical test;
3) Defendant’s statement of refusal to submit to a chemical blood test is inadmissible as evidence due to the failure to give sufficient warning of the effect of such refusal pursuant to Vehicle and Traffic Law § 1194.
The defendant is charged with manslaughter in the second degree (two counts), vehicular manslaughter in the second degree (two counts), assault in the second degree, assault in the third degree, and aggravated unlicensed operation of a motor vehicle in the third degree.
After a hearing held before me, I make the following findings of fact and conclusions of law.
FINDINGS OF FACT
The People called two witnesses at the hearing — Police Officer Frank Contrera and Assistant District Attorney David J. Bernstein. I find their testimony credible.
On February 13, 1986, in response to a radio run, Officer Contrera arrived on the lower level of the Manhattan Bridge at approximately 1:39 a.m. There he observed the aftermath of an accident involving two Yellow Cabs and a van. Through preliminary questioning, Contrera learned that the van had been driven by the defendant. In response to an inquiry by Contrera the defendant replied that he had left his driver’s license home. Contrera later learned that the second cab was driven by Madonna Perkins and contained one passenger, *663 Keith Seabast. Defendant’s van had swerved into oncoming traffic and collided head-on with the cab driven by Ms. Perkins, who was severely injured. Mr. Seabast appeared to be dead. Ms. Perkins and Mr. Seabast both in fact died as a result of injuries suffered in this collision. Defendant was taken by ambulance to Long Island College Hospital, approximately 30 minutes after Contrera had arrived on the scene. The defendant was not in handcuffs or in custody at that time.
At the hospital Contrera arrested the defendant at 3:30 a.m. At the time defendant was in the emergency trauma room, lying down on a stretcher, neither handcuffed nor restrained. Contrera testified that defendant had blood on his forehead and had the odor of alcohol on his breath. His eyes were glassy and bloodshot and his speech was slurred. Although he appeared somewhat groggy, he was alert and able to answer questions.
Officer Contrera administered legally adequate Miranda warnings to each of which defendant replied that he understood, and was willing to answer questions. When asked if he would submit to a blood test, defendant responded "You’re not taking my fucking blood.” He further indicated that he didn’t want to answer any more questions.
Contrera telephoned Assistant District Attorney David Bernstein, who instructed Contrera with respect to the procedure that would be followed. Contrera filled out a handwritten affidavit and an order to compel submission to a blood test and read them over the telephone to ADA Bernstein. This affidavit is 1 of 2 prepared by Contrera. It will hereinafter be referred to as the handwritten affidavit, to distinguish it from a typewritten affidavit later prepared for Contrera.
A three-way telephone communication then took place with Officer Contrera located in the emergency room at Long Island College Hospital, ADA Bernstein at the District Attorney’s office, both in Kings County, and Judge Richard Lowe in New York City Criminal Court in New York County. After Contrera was sworn in by a court clerk in Manhattan, Bernstein had Contrera read the handwritten affidavit to Judge Lowe; then, at Judge Lowe’s request, Contrera read the order which he had prepared. Judge Lowe then authorized the test and Officer Contrera placed Judge Lowe’s name on the order and signed the order with Judge Lowe’s name, and noted the time as 6:25 a.m. This conversation was recorded on audiotape, and the order was designated order number 58.
*664 Contrera, who was still in the emergency room, then attempted to have the blood sample withdrawn, but discovered that the defendant was undergoing a CAT scan. The scan took more than two hours to complete, and Contrera was unable to have the blood sample taken prior to completion of the scan.
Finally, at 9:02 a.m., the order was executed and two vials of blood were withdrawn in the presence of Officer Contrera and Officer Collins of the Highway District. One vial was accidentally broken; the other was taken by Officer Collins who vouchered it at the 76th Precinct (voucher No. C374733) and then took it to the Police Academy laboratory.
At approximately 3:00 p.m. in the afternoon of February 13, 1986, Bernstein learned that while his voice was intelligible on the audiotape, the voices of Officer Contrera and Judge Lowe were largely unintelligible. He then drafted typewritten affirmations for himself and for Judge Lowe, and an affidavit for Contrera, ostensibly setting forth the substance of what transpired during the telephone conversation. ADA Bernstein had Contrera read and sign the typewritten affidavit at 8:36 p.m. on February 13, 1986. This, Contrera’s second affidavit, omits any reference to his reading of the order to Judge Lowe.
Bernstein then went to Manhattan and had Judge Lowe read the affirmation and sign it. This occurred at approximately 3:00 a.m. on February 14, 1986. Then, at approximately 3:00 or 4:00 a.m., Bernstein filed with the court in Manhattan Contrera’s handwritten affidavit and order, the two typewritten affirmations (of Bernstein and Judge Lowe) and the typewritten affidavit of Officer Contrera. Certified copies of these documents were received in evidence at the hearing collectively as People’s exhibit 1. Bernstein also filed with the court a copy of the audiotape.
Bernstein testified to the inaccuracy previously discussed in the typewritten affirmations of himself and Judge Lowe, and in the typewritten affidavit of Officer Contrera. Specifically, these three documents, which are identical in this respect, omit the body of the order. When they first refer to the reading of the application for the order, they then list only the first and last paragraphs of the application, omitting paragraphs 2, 3 and 4. Then, when they refer to the reading of the order, they list paragraphs 1 through 4 of the application, omitting the entire body of the order. I make a finding of fact, based on the credible testimony adduced at the hearing, that Contrera did in fact read the handwritten application and *665 order verbatim to Judge Lowe, without omitting any paragraphs.
CONCLUSIONS OF LAW
The first contention of the defendant is that the results of the blood test must be suppressed due to the failure to draw the blood within two hours of the granting of the court order, as required by section 1194 of the Vehicle and Traffic Law.
The blood test in issue was a compulsory chemical test taken over the defendant’s refusal, and as such was obtained pursuant to the provisions of Vehicle and Traffic Law § 1194-a. While that section is silent on the necessity of obtaining the blood test within any particularized time limit, it is defendant’s position that the two-hour limit specified in Vehicle and Traffic Law § 1194 also applies to Vehicle and Traffic Law § 1194-a. Section 1194 requires that a chemical test be performed within two hours of arrest, or within two hours after a breath test indicates consumption of alcohol.
Defendant cites People v D’Angelo (124 Misc 2d 1050) in support of this proposition. In D’Angelo the court held that the two-hour rule of Vehicle and Traffic Law § 1194 applied to Vehicle and Trafile Law § 1194-a, based upon a reading of the "Memorandum of Legislative Representative of City of New York” (1983 McKinney’s Session Laws of NY, at 2569), prepared in support of this amendment to Vehicle and Traffic Law § 1194, which states in part: "A chemical test may be administered only in accordance with existing guidelines in Section 1194 of the Vehicle and Traffic Law”. The court reasoned that since "[o]ne of those guidelines is that the test must be performed within two hours after the defendant’s arrest” (People v D’Angelo, supra, at 1051), the Legislature intended that the two-hour requirement apply to section 1194-a.
The People in opposition cite People v Morse (127 Misc 2d 468). The court in Morse disagreed with the D’Angelo decision (supra), finding that the legislative memoranda analysis lent "dubious support” to the proposition that Vehicle and Traffic Law § 1194’s two-hour requirement also applies to section 1194-a tests. (Supra, at 472.) The Morse court instead made a careful evaluation of those instances where section 1194-a refers to section 1194. Of the five instances found, none refer to section 1194 (1) (1) or (1) (2), wherein are found the two situations where the two-hour requirement comes into play. *666 The court found that had the Legislature intended for the two-hour requirement to apply it could have done so, and that since the Legislature saw fit to refer to several subdivisions of section 1194 but not to the two-hour requirement found in section 1194 (1) (1) and (1) (2), then it did not intend that section 1194-a would contain any two-hour requirement.*
The Appellate Division, Second Department, has recently held that the two-hour requirement of Vehicle and Traffic Law § 1194 does not apply where a defendant gives express consent to the administration of a blood test. In People v Mills (124 AD2d 600), the court went on to note: "The requirement that the blood sample be obtained within two hours after arrest, however, is relevant only with regard to blood samples obtained in cases where no express consent has been given. Thus, for example, it has been recognized that the two-hour requirement does not extend to blood samples obtained by court order pursuant to Vehicle and Traffic Law § 1194-a, where there has been a refusal to submit to a request for a blood test (see, People v Morse, 127 Misc 2d 468; contra, People v D’Angelo, 124 Misc 2d 1050).” (People v Mills, 124 AD2d 600, 601, supra.) While this statement suggests that the Appellate Division would agree with the holding of Morse (supra), it is by no means the holding of the Appellate Division nor is this court bound by this statement.
Legislative intent is of course a consideration when interpreting statutory language. This court, however, as did the Morse court, finds the legislative intent unclear with respect to the issue at bar.
This court finds the reasoning of the Morse decision (supra) more persuasive. Vehicle and Traffic Law § 1194-a clearly sets forth the procedures to be followed in obtaining a compulsory chemical test. Where necessary, reference is made to other sections of the Vehicle and Traffic Law. With those references, this section is complete. It is not necessary to further incorporate other sections not mentioned therein in order to effectuate the statutory procedure.
This court holds therefore that since the Legislature did not include a two-hour rule in Vehicle and Traffic Law § 1194-a nor see fit to incorporate by reference the two-hour rule *667 provided in Vehicle and Traffic Law § 1194 (1) (1) or (1) (2), then no such rule applies to a compulsory chemical test performed pursuant to Vehicle and Traffic Law § 1194-a. Accordingly, the motion to suppress based on the failure to draw blood within two hours of the granting of the court order is denied.
The defendant next contends that the People’s failure to follow the procedure set forth in Vehicle and Traffic Law § 1194-a mandates suppression of the chemical test results. He cites the inaudibility of the tape of the telephonic conversation and maintains that the contents of the typewritten affidavits and affirmations of Contrera, Bernstein and Judge Lowe do not, due to the previously described omissions, satisfy the requirements of Vehicle and Traffic Law § 1194-a (3) (b).
That section requires that the applicant identify himself by name and title, state the purpose of the communication and be placed under oath by the court. The applicant must then state that the person from whom the chemical test was requested was the operator of the motor vehicle and in the course of such operation of a person other than the operator was killed or seriously injured. The applicant must further state specific allegations of fact supporting a statement that, based upon a totality of the circumstances, there is reasonable cause to believe that such person was operating a motor vehicle in violation of Vehicle and Traffic Law § 1192 and, after being placed under oath, such person refused to submit to a chemical test.
The court, when satisfied that the requirements for the issuance of a court order have been met, may then grant the application and issue an order requiring the accused to submit to a chemical test. The applicant must prepare the order in accordance with the instructions of the Judge, and the order must include the date and time it was issued. The order must be signed by the applicant when issued orally, or by the Judge if issued in person.
Finally, the oath or oaths of the applicant and any other persons and all of the remaining communication must be recorded, either by a voice recording device or by verbatim stenographic or verbatim longhand notes. In the event a voice recording device is used, the Judge must have the record transcribed, certify to the accuracy of the transcription and file the original record and transcription with the court within 72 hours of the issuance of the court order.
*668 Defendant claims that the inability to transcribe the record in this case, due to the inaudibility of the audiotape, constitutes a failure to comply with the statute, thereby making the results of the chemical test inadmissible. He maintains that the efforts to satisfy the statute by obtaining the affidavits from Contrera, Lowe, and Bernstein were ineffective in that they contain the omissions previously described, and in any event do not constitute strict compliance with the statute. Defendant sees this lack of strict compliance as not merely a technical defect, but of such significance as to require suppression.
Defendant cites People v White (133 Misc 2d 386) in support of his position. In that case, which also involved a telephonic application pursuant to Vehicle and Traffic Law § 1194-a, the District Attorney mistakenly believed that obtaining the signatures of both the issuing Judge and the officer who applied for the order on the written transcript of the telephone proceeding within 24 hours of the authorization for the blood test would satisfy the statute. In ordering suppression of the chemical test results, the court in White held that the failure to prepare a written authorizing order was not a mere technical violation which could be overlooked. The court cited People v Crandall (108 AD2d 413), in which the Appellate Division, Third Department, was faced with a similar question, in the context of article 690 of the Criminal Procedure Law.
In Crandall (supra), the statutory procedures were not followed in three instances: (1) although the officers were sworn in, the administration of the oaths was not recorded or transcribed; (2) two off-the-record conversations in which the Judge solicited information to verify an informant’s identity were also not recorded or transcribed; and (3) the applicant failed to prepare a written warrant and then read it to the Judge, verbatim, as required by CPL 690.40 (3). The court found that the first two instances were not fatal defects, but were more in the nature of technical defects which were excusable. The court found, however, that the third instance could not be overlooked on a theory of substantial compliance. The court noted "significant qualitative differences between the requirement that a written instrument be drawn and read to the issuing judge during the application hearing and those other procedural directives previously discussed to which a lack of strict adherence has been forgiven.” (People v Crandall, supra, at 417.)
The court noted that recording, transcribing, certifying and *669 filing requirements insure the regularity of the process of applying for a warrant and preserving the integrity of the record for review in any ensuing litigation. The court also noted that the reduction of the warrant to a written instrument and its reading to the issuing Judge performs not only these functions, but also requires the issuing Judge to focus on the warrant’s description of the place to be searched and the persons or things to be seized; insures that the search is only as extensive as actually authorized; and provides immediately available documentation of the existence and scope of the authorization both to persons in possession of the property to be seized and law enforcement officials who execute the warrant. Additionally, the court noted the long, unbroken common-law tradition that a judicial fiat must be in writing before it can effectively impinge upon important rights.
Thus, in both White (supra) and Crandall (supra), the courts held that the failure to prepare a written document prior to execution of the order was a fatal defect, although the Crandall court, as noted above, recognized that some errors or omissions are merely technical violations which do not affect the validity of the court order or warrant.
The Appellate Division, Third Department, in People v Rollins (118 AD2d 949) again found a technical defect not fatal, this time in the context of an order obtained pursuant to Vehicle and Traffic Law § 1194-a. In that case, the applying trooper was not sworn prior to making the application, although he thought he was sworn and did in fact swear to the context of the application retroactively. The court found that the totality of the circumstances sworn to complied with the test prescribed by Vehicle and Traffic Law § 1194-a (2), and that the blood-seizure order was valid.
Unlike the situations presented in White (supra) and Crandall (supra), a written order was prepared in the case at bar. In fact, the statute was complied with in all respects save the transcription requirement. This conclusion is based on an examination of the testimony adduced at the hearing, as well as the typewritten affidavits and handwritten application and order.
With respect to the failure to transcribe the record, this court is convinced that the problem of inaudibility was the result of an inadvertent mechanical breakdown, and not the result of any bad faith on the part of the People. The court is also convinced that the defendant has established no real *670 prejudice based on the lack of a transcription. While the typewritten affidavits do contain the previously mentioned omissions, I have held that Contrera did in fact read the application and order verbatim to Judge Lowe. Thus, Judge Lowe had heard all the information required by the statute, and the written order was properly issued.
Because a written order was issued in this case, the concerns discussed in White (supra) and Crandall (supra) are not present. This court feels that the inability to prepare a transcription of the voice recording is not such a defect as would preclude a finding of such substantial compliance with the statute. This was more in the nature of the technical defects found excusable in Crandall and Rollins (supra). The mechanical breakdown of the recording equipment and the errors in transcription in the typewritten affidavits, while not to be commended, did not prejudice the defendant to such a degree as to require suppression of the results of the blood test. This aspect of the defendant’s motion is therefore denied.
Defendant’s third and final contention is that his statement of refusal to submit to the chemical test is inadmissible as evidence because he was not given sufficient warning, in clear and unequivocal language, of the effect of such refusal as required by the Vehicle and Traffic Law.
The People oppose on the ground that the very wording of Vehicle and Traffic Law § 1194 (4) makes it inapplicable to this prosecution. That section provides as follows: "Evidence of a refusal to submit to such chemical test or any portion thereof shall be admissible in any trial, proceeding or hearing based upon a violation of the provisions of section eleven hundred ninety-two of this chapter but only upon a showing that the person was given sufficient warning, in clear and unequivocal language, of the effect of such refusal and that the person persisted in his refusal” (emphasis supplied). The People argue that the material emphasized above makes this section inapplicable, since only Penal Law violations are alleged in this indictment. Neither party has cited any case on point with this issue.
The indictment in this case contains two counts of vehicular manslaughter in the second degree. Section 125.12 of the Penal Law reads as follows:
"A person is guilty of vehicular manslaughter in the second degree when he:
"(1) commits the crime of criminally negligent homicide as defined in section 125.10, and
*671 "(2) causes the death of such other person by operation of a vehicle in violation of subdivision two, three or four of section eleven hundred ninety-two of the vehicle and traffic law.”
In order to establish the defendant’s guilt of this offense, the People will have to prove as an element that he was operating a motor vehicle in violation of Vehicle and Traffic Law § 1192. In light of this it appears that Vehicle and Traffic Law § 1194 (4) is applicable, at least to the two counts of vehicular manslaughter.
The People do not contend, nor has any proof been presented, that Officer Contrera gave the defendant the warnings required by Vehicle and Traffic Law § 1194 (4). The defendant’s statement of refusal therefore will not be admissible at trial.
One further thing remains to be discussed. In its findings of fact, this court noted that some statements were made by the defendant to Contrera at the scene of the accident. These statements were obtained by Contrera when he first responded to the scene and was attempting to ascertain what had happened. There is no question that the defendant was not in custody at that time. Since Miranda warnings were not required at that point, during the course of Contrera’s preliminary investigation, those statements are admissible.
In conclusion, the motion to suppress the results of the chemical blood test is denied; the motion to preclude admission of defendant’s refusal to submit to the test is granted; and the motion to suppress the prearrest statements given at the scene of the accident is denied.

 The People also cite People v White (133 Misc 2d 386), where, in a footnote, the court indicated its view that People v Morse (127 Misc 2d 468) was correctly decided (People v White, supra, at 391, n 4). This court notes that this is dicta and accords it no precedential value.