*677 OPINION OF THE COURT
Alfred Donati, Jr., J.
Defendant Enrique Sesman is charged with driving while intoxicated (Vehicle and Traffic Law § 1192 [2], [3]). Defendant moves pursuant to CPL 710.20 and 710.30 to dismiss the information on the ground that his arrest was without probable cause and in the alternative to suppress his statements and to suppress the results of his breathalyzer test.
A hearing with respect to the circumstances surrounding defendant’s arrest, the taking of the statements, and the administering of the breathalyzer test was conducted before me on April 29 and May 2, 1987, at which three police officers testified. Based upon their credible testimony and the memoranda of law submitted by both parties, I make the following findings of fact and conclusions of law.
On the evening of February 13, 1987, two police officers assigned to patrol car duty with the Bronx Driving While Intoxicated Task Force observed defendant’s vehicle proceeding in the opposite direction with what appeared to be a cracked windshield. For that reason the officers turned and followed defendant’s vehicle in order to stop him to speak to him about the windshield. The officers were not able to catch up to defendant’s vehicle for about four blocks, during which time they observed him swerving as he was driving. When defendant was stopped and questioned, he had alcohol on his breath, was unsteady on his feet, his speech was slurred and his eyes were watery and bloodshot.
The police officers asked defendant if he was drinking and if he would take a breath (alco-sensor) test; when the defendant saw the alco-sensor machine withdrawn from the officer’s pocket he stated "Come on, I’m at least a 15”. In fact, he registered .25 on the machine and was thereupon arrested.
Defendant was then taken to the 47th Precinct; en route he was advised of his Miranda rights each of which he responded to in the affirmative. At the precinct defendant was questioned and thereafter was transported to central booking. There, with defendant’s acquiescence, a breathalyzer test was administered, which registered .21. In the course of the entire questioning defendant admitted, among other things, that he had been drinking rum.
Based upon the record before me, defendant’s Dunaway and Huntley motions are readily resolvable. It is defendant’s motion to suppress the breathalyzer results which, raising an *678 issue of apparent first impression as to the applicable burden of proof, requires in-depth analysis.
THE DUNA WA Y AND HUNTLEY MOTIONS
On the record before me I find that the stop of defendant on February 13, 1987, was lawful; the police officers’ observations as to what appeared to be a cracked windshield on defendant’s automobile was sufficient basis for the police to at least pursue the vehicle to make inquiry of defendant as to the windshield. Moreover, the officers’ observation of defendant’s vehicle swerving as they were proceeding to catch up to that vehicle provided an additional basis for the stop. Further, the swerving motion and the police officers’ observations of defendant’s physical condition provided a lawful basis for their request that he take the aleo-sensor test and for subsequently arresting him on a driving-while-intoxicated charge.
I find that the defendant was not in custody prior to his arrest prior to his taking that test and, accordingly, that his statement "Come on now, I’m at least a 15” did not result from custodial interrogation but, in fact, was a spontaneous declaration and thus not in derogation of defendant’s Miranda rights. I find that thereafter defendant was apprised of, understood, and knowingly waived those rights prior to his making additional statements and those statements are thus also not subject to suppression. Therefore, defendant’s motions to dismiss or suppress based upon a lack of probable cause or upon Miranda principles are denied. (See, People v Ingle, 36 NY2d 413 [1975]; People v Yukl, 25 NY2d 585 [1969]; People v Morse, 127 Misc 2d 468 [Essex County Ct 1985].)
THE MOTION TO SUPPRESS THE BREATHALYZER TEST
Vehicle and Traffic Law § 1194 provides, in pertinent part, as follows:
"§ 1194. Chemical tests
"1. Any person who operates a motor vehicle in this state shall be deemed to have given his consent to a chemical test, of one or more of the following: his breath, blood, urine, or saliva, for the purpose of determining the alcoholic and/or drug content of his blood provided that such test is administered at the direction of a police officer:
"(1) having reasonable grounds to believe such person to have been operating in violation of any subdivision of section *679 eleven hundred ninety-two and within two hours after such person has been placed under arrest for any such violation”.
The People contend that defendant was arrested on the Vehicle and Traffic Law § 1192 charges herein at 8:20 p.m. on the night here involved and that the breathalyzer test was administered to him at 10:19 p.m., thus satisfying the two-hour provision of Vehicle and Traffic Law § 1194. In this case, whether or not two hours or less transpired between the time of defendant’s arrest and the breathalyzer test turns upon the precision of the measurement of the gap between arrest and breath test, because there exists here a tolerance of only a single minute between those two events and the two-hour maximum. For this reason the evidence in this hearing relevant to the establishment of the times at which these two events occurred must be very clearly examined, and that evidence then tested by the burden of proof applicable to the question of whether two hours or less transpired.
The burden of proof issue thus presented is whether the People are obliged to prove beyond a reasonable doubt, or by some lesser measure (e.g., a preponderance of the evidence or clear and convincing evidence), that the breathalyzer test was given within the two hours provided for in Vehicle and Traffic Law § 1194; that issue, as previously indicated, is one of apparent first impression.
In their memorandum of law, the People also contend that defendant’s "consent” to submit to the breathalyzer test frees the People entirely from the obligation of complying with the two-hour requirement. In turn, defendant contends that his "consent” was obtained by coercion, and thus is a nullity.
The evidence relevant to the precise time of defendant’s arrest was inconclusive. For example, although the arresting officer wrote 8:20 p.m. in his memo book as the time of arrest, he did not do so until after they arrived at the precinct. The officer explained that the time written down at the precinct was accurate because he had looked at his watch at the time of defendant’s arrest. But no reason was advanced why the time was not written at the time of the arrest or at least on the ride to the precinct. One officer testified that defendant was originally "spotted” at 8:10 p.m. and defendant was stopped at 8:13 or 8:14 p.m. One officer’s record showed 8:15 p.m. as the time of the stop. Another officer’s written records showed the time of the stop as 8:16 p.m. and that officer testified that the defendant "was a DWI within 1 or 2 minutes *680 after he was pulled over”. The officers also testified that the administering of the alco-sensor test to defendant at the scene took "10 to 15 seconds” to administer. The officer’s written records of the time defendant was first tested at central booking originally showed 10:13 p.m., this was then changed to 10:03 p.m. because, the officer explained, he saw the latter time on the clock when he subsequently reviewed the videotape in the case. The officer’s testimony as to the length of the time for the trip from the precinct to central booking was "approximately 20 minutes”; his notes showed the trip took almost twice as long, namely, 38 minutes.
In the court’s view the evidence hereinabove reviewed indicates that the various times testified to and recorded in the officer’s records, including the time of arrest, were at best approximations and thus the 8:20 p.m. assertion by the People as the time of arrest cannot be established conclusively.
Nor, at the other end of the two-hour spectrum, can the asserted time that defendant was given the breathalyzer test be established conclusively, for other reasons.
The videotape taken of the proceedings with defendant at central booking showed that they commenced at 10:03 p.m. Prior to 10:19 p.m. the videotape was ended and defendant was taken to another room where the breathalyzer test was administered, not immediately, but after some preliminary activity by the testing officer. The testing officer testified that it was his "best recollection” that defendant blew into the machine at 10:19 p.m. but also stated that the time he remembered as the testing time was "by the clock” on the wall shown on the videotape. However, that clock, shown on the videotape played at the hearing when defendant reentered the room after taking the test in the adjoining room showed almost 10:23 p.m. The testing officer testified that the time which elapsed between the defendant’s completing the test and reentering the room with the clock was about 1 or 1 Vi minutes. Thus, defendant must have completed the breathalyzer test at approximately 10:21 p.m. The evidence again was inconclusive as to the length of time which transpired between the commencement of the administration of the breathalyzer test and its completion, but in any event it appeared from the testimony that it was a relatively brief process. The court finds the test could have begun (the point at which the test is deemed "administered” [People v Hummel, 81 Misc 2d 280 (Dist Ct, Nassau County 1975)]) before or after 10:19 p.m.
*681 Under all of the foregoing circumstances, this court has concluded that whether the evidence is sufficient to establish the asserted 8:20 p.m. arrest time and 10:19 p.m. testing time turns upon the burden of proof applicable. If the People’s burden is something less than proof beyond a reasonable doubt, that burden might be sustained here; if that standard is proof beyond a reasonable doubt, that burden cannot be sustained on this record.
As detailed below, this court has concluded that the applicable standard is that the People must prove beyond a reasonable doubt that the test was commenced within two hours after the time of defendant’s arrest; that standard has not been met here and the test results accordingly are suppressed.
One of the offenses with which defendant here is charged is violation of Vehicle and Traffic Law § 1192 (2), which provides that "[n]o person shall operate a motor vehicle while he has .10 of one percentum or more by weight of alcohol in his blood as shown by chemical analysis of his blood, breath, urine or saliva, made pursuant to the provisions of section eleven hundred ninety-four of this chapter.”
It is axiomatic that Vehicle and Traffic Law § 1194 (1) (1), which governs the administration of the breathalyzer test, was enacted to insure that the results of any chemical test will be both probative and meaningful with respect to the amount of alcohol in a given defendant’s blood at the time of his operation of a motor vehicle. (People v Bock, 77 Misc 2d 350 [Broome County Ct 1974.]) As such, it is but one of the statutory requirements which must be met before a chemical test result may be admitted into evidence (see, People v Meikrantz, 77 Misc 2d 892 [Broome County Ct 1974]). Thus, the two-hour limitation is for the purpose of qualifying the results of the test for admission into evidence on a Vehicle and Traffic Law § 1192 (2) charge. (Matter of Donahue v Tofany, 33 AD2d 590 [3d Dept 1969].)
Moreover, the results of the breathalyzer are not competent evidence and should not be presented for consideration to the jury unless such test was administered within two hours of defendant’s arrest. In People v Brol (81 AD2d 739 [4th Dept 1981]) the court held that the evidence of refusal to take a breathalyzer test was incompetent and should not have been considered by the jury where defendant was asked to take the test more than two hours subsequent to his arrest. The court reasoned that "[u]nless the test is taken within the two-hour *682 time limit * * * the results are not competent evidence and may not be received in evidence against the operator”. (People v Brol, supra, at 740; see also, People v Keane, 76 AD2d 963 [3d Dept 1980]; People v Bock, supra.)
In People v Mertz (68 NY2d 136, 146 [1986]) the Court of Appeals reaffirmed the proposition that evidence that a breathalyzer test administered "within two hours” of arrest showed defendant to have a blood alcohol content of .10 or more is sufficient to establish prima facie a violation of Vehicle and Traffic Law § 1192 (2) (emphasis added).
As noted above, Vehicle and Traffic Law § 1192 (2) provides that "[n]o person shall operate a motor vehicle while he has .10 of one percentum or more by weight of alcohol in his blood as shown by chemical analysis of his * * * breath * * * made pursuant to the provisions of section eleven hundred ninety-four of this chapter.” As the statute requires, by reference, that the provisions of section 1194 must be adhered to as a requirement for conviction, the court is constrained to find that the two-hour provision of Vehicle and Traffic Law § 1194 is an essential element of the offense of violating Vehicle and Traffic Law § 1192 (2), and as such must be established beyond a reasonable doubt. (People v Kibbe, 35 NY2d 407 [1974]; People v Guarino, 56 AD2d 638 [2d Dept 1977].)
Since it is incumbent upon the People to prove at trial that the test was administered in a timely fashion it follows that where the time that the test was administered is the subject of a pretrial hearing concerning the admissibility of the results of chemical analysis, the People must sustain the same burden as they have at trial, that is, the People must provide beyond a reasonable doubt that the provisions of Vehicle and Traffic Law § 1194 were complied with before such results are admissible. (People v Keane, supra.) As aptly noted by defendant, such pretrial evidentiary hearings arise from a recognition that a jury exposed to such highly incriminating evidence would be hard pressed to disregard it, even if the jury were to resolve the question of admissibility in favor of the defendant (citing Jackson v Denno, 378 US 368 [1964]).
On the critical question here of the standard to be employed as to the burden of proof at this pretrial suppression hearing, the court also finds this situation to be analogous to a Huntley hearing in which the reasonable doubt burden of proof is placed upon the People on the issue of voluntariness. Although this hearing involves suppression of physical evidence, *683 as in a Mapp hearing, the lesser burden of proof imposed upon a defendant at such a hearing is not appropriately imposed on the People in this context; the issue presented in and subject matter of the usual Mapp hearing does not ordinarily involve an element of the offense charged against the defendant, as does this hearing. It must also be noted that the beyond-a-reasonable-doubt standard which is applicable to a jury’s consideration of voluntariness of a confession is thus the same standard applied to "that selfsame issue” in a hearing on a Huntley motion (People v Leonti, 18 NY2d 384, 389 [1966]). Here, the two-hour issue before me is also the "selfsame issue” which is to be submitted to the trial jury.
The two-hour requirement of Vehicle and Traffic Law § 1194 is by incorporation into Vehicle and Traffic Law § 1192 (2) and accordingly must be proven by the People beyond a reasonable doubt to sustain a conviction. In addition by analogy to the Huntley situation, the same burden of proof standard is to be applied in the pretrial suppression hearing as is applied at trial.
The court must reject the People’s contention that the instant question presents a Fourth Amendment issue. Where, as here, probable cause and exigent circumstances exist and a reasonable examination procedure is followed, Fourth Amendment requirements are satisfied as to the act of the taking of the blood sample. (Schmerber v California, 384 US 757, 766-772 [1966]; People v Kates, 53 NY2d 591, 594-595 [1981]; People v Graser, 90 Misc 2d 219, 226 [Town Ct, Erie County 1977].) The instant question, which is not resolved by such findings and result, relates to the time within which that act of the taking of the sample (in this case, the breath sample) was performed. On this question the authorities, reasoning, and result set forth hereinabove are determinative. Nor does a motion for suppression of breathalyzer results present a Fifth Amendment issue. Breathalyzer tests and results are clearly nontestimonial in character. (Schmerber v California, supra, at 760-765; People v Kates, supra, at 594; People v Boudreau, 115 AD2d 652 [2d Dept 1985]; People v Graser, supra, at 225.)
The People contend defendant’s "consent” to submit to the breathalyzer test constitutes a waiver of the two-hour requirement of Vehicle and Traffic Law § 1194. This argument would effectively remove the two-hour element from the statute: if defendant "consented”, that is, agreed to the test, by the People’s reasoning the two-hour provision would not apply; *684 and of course if defendant refuses the test the two-hour requirement would be inapplicable.
Vehicle and Traffic Law § 1194 provides that any person who operates a motor vehicle is deemed to consent to a chemical test if certain conditions are met, one of which is specifically the two-hour time limit. Defendant was given a choice between losing his license and taking the breathalyzer test. Defendant cannot be retrospectively held to have waived the two-hour requirement or his right to contest any aspect pertaining to the admissibility of the test, by acquiescing to the procedure. The purpose of Vehicle and Traffic Law § 1194 warnings and the requirement that defendant be asked to "consent” rather than be physically compelled is to promote the efficient, productive functioning of the statutory procedure for criminal prosecution of "DWI cases”. It was not intended to diminish any legal rights defendant was otherwise entitled to exercise.
Indeed, the request for defendant’s "consent” on the part of the officer administering the breathalyzer test and the arguments of the People thereupon based on that "express consent” is, inadvertently, misleading. Defendant’s "consent” is not needed; as already indicated, defendant is deemed by Vehicle and Traffic Law § 1194 to have given his consent to the test. What is more accurately to be asked of defendant by the testing officer is whether defendant is revoking that deemed consent, by his refusal to take the test (which is his right, but, whereupon, because his license to drive is issued on the condition of his deemed consent, this license will be lost by his revocation of that consent). As noted in People v Mills (124 AD2d 600 [2d Dept 1986]), Vehicle and Traffic Law § 1194 and § 1194-a provisions are designed to govern the situation in which test results are obtained by "implied consent” (124 AD2d, supra, at 601). Unlike in Mills, however, defendant here cannot be said to have expressly consented to the test but, rather, in accordance with the statutory scheme for such testing, merely declined to revoke his deemed consent (thereby choosing not to have his driving privileges immediately removed). To hold under these circumstances that the two-hour requirement does not apply would be to nullify the plain language setting forth that requirement in Vehicle and Traffic Law § 1194 (and, indeed, reinforced in Vehicle and Traffic Law § 1192 [2]), thereby usurping the Legislature’s role in determining the statutory scheme for such testing (and see, People v Kates, supra, at 595-596).
*685 In view of the foregoing, it is unnecessary to reach the question of whether defendant’s acquiescence to taking the breathalyzer test was obtained by coercion and thus had no lawful force or effect.
In light of the foregoing, defendant’s Dunaway and Huntley motions are denied; defendant’s Mapp motion is granted and the breathalyzer test results herein are hereby suppressed.