OPINION OF THE COURT
Jones, J.
We uphold the constitutionality of subdivision 4 of section 1194 of the Vehicle and Traffic Law which provides that evidence of a defendant’s refusal to submit to a chemical test to determine the alcoholic content of his blood shall be admissible in any trial based on a violation of section 1192 of the Vehicle and Traffic Law, provided he was given sufficient warning, in clear and unequivocal language, of the effect of such refusal. The introduction of such evidence in accordance with this statute does not violate the defendant’s privilege against self incrimination under either the Federal or the State Constitution.
After a passing motorist had stopped them to report a serious accident, New York City Police Officers Mosiello and Spaulding proceeded immediately to the scene and found an automobile with its engine still running rammed into a fence separating the Major Deegan Expressway from the adjoining street. Defendant, alone in the front seat, was slumped over and bleeding profusely from the head. After calling for an ambulance the officers left their police car, walked over to the automobile and asked defendant who was fully awake what had happened. Both officers detected a heavy odor of alcohol on defendant’s breath and observed two bottles of wine, one full, the other more than half empty, on the floor by the front seat. The officers helped defendant out of his car and, no ambulance having arrived, took him to the hospital in their patrol car. It was clear to both officers, who together had effected 25 arrests for driving while intoxicated, that defendant was then in that condition.
While awaiting medical treatment in the emergency room, defendant was asked for his.driver’s license and automobile registration. After some difficulty he produced his driver’s license from his wallet but refused to part with his registration, at which point Officer Mosiello took his wallet from him, *104 opened, it and in addition to the registration found several betting slips.
When Police Officer Haverlin, assigned to the Intoxicated Drivers Testing Unit, arrived at the hospital to administer a blood test to determine the extent of defendant’s inebriation, he informed defendant of his rights and warned him that refusal to take the blood test might result in the revocation of his driver’s license. When defendant refused to take the test he was further advised that pursuant to law his refusal to take the test could be introduced into evidence in court. Because of defendant’s continued refusal no test was administered (Vehicle and Traffic Law, § 1194, subd 2).
Defendant was thereafter charged with possession of gambling records in the second degree, promoting gambling in the second degree, and driving while intoxicated. After a pretrial hearing defendant’s motion to suppress the betting slips taken from his wallet was denied. At the trial the People were permitted, over objection, to introduce evidence of defendant’s refusal to submit to the chemical test to determine the alcoholic content of his blood. On the People’s case defense counsel sought to cross-examine the two arresting officers as to their knowledge at the time of the arrest of a civilian complaint which had previously been filed by defendant against a fellow officer. The prosecutor’s objection to such cross-examination was sustained. When defendant took the stand later in the trial he testified that one of the officers told him that the officer knew about the complaint and that the policeman against whom the complaint had been lodged would give the arresting officer a medal when he heard, about defendant’s arrest. The prosecutor’s objection to this testimony was sustained.
At the conclusion of the evidence the jury was charged, inter alia, that it could consider the evidence of defendant’s refusal to submit to the chemical test of his blood. Defense counsel’s request that such evidence could not be considered was denied. The trial court also submitted the charge of driving while impaired as a lesser included offense of driving while intoxicated. The jury acquitted defendant of the charges of promoting gambling and of driving while intoxicated, but found him guilty of possession of gambling records and of driving while impaired.
The Appellate Term reversed the judgment of conviction on *105 both charges and ordered a new trial, holding that the exclusion of the circumstantial evidence of hostility of the arresting officers was reversible error and that the introduction of the evidence of defendant’s refusal to submit to a chemical test to determine the alcoholic content of his blood (as provided for by Vehicle and Traffic Law, § 1194, subd 4) violated his constitutional privilege against self incrimination. Leave was granted the People to appeal to our court, and we now reverse the order of Appellate Term and remit the case to that court for determination of the facts. (CPL 470.40, subd 2, par [b].)
With reference to the exclusion of the evidence offered in this case on the issue of hostility of the arresting officer witnesses, it is recognized as a general proposition that as to any witness "hostility to the party against whom he testifies, may be shown to affect his credibility” (Richardson, Evidence [10th ed], § 503, pp 490-491). The evidence sought to be introduced for that purpose in this instance, however, was remote; it was not evidence that defendant had made a complaint against the witness himself which, because of the normal reaction to the filing of a complaint, would have permitted an inference of personal hostility on the part of the witness who was testifying. Here the inference of hostility which defendant would have hoped that the jury might draw would have been because the action was taken against a fellow police officer, a significant step removed. Other than that they were members of the same police department and that the witness knew the other officer and had worked with him on one or two occasions, the nature or quality of the relationship between the witness and the officer against whom the complaint had been lodged was never established. Nor was any tender made to show the character or seriousness of the complaint, or whether it was warranted or could reasonably have been viewed as an unjustified attack on a public servant. Importing, as the admission of the evidence in this case would have, consideration by the jury of these collateral issues, it should be left to the sound discretion of the trial court whether to admit or to exclude as too remote the evidence of hostility. (3A Wigmore, Evidence [Chadbourn rev, 1970], § 949). We cannot conclude that the exclusion in this instance, in which the weighing of remoteness under all the circumstances was critical, was erroneous as a matter of law, although in most instances, at least where the hostility-provoking circumstance or action involves the witness himself, such factors are prop *106 erly classified as going to probative worth rather than admissibility.
In consideration of defendant’s attack on the constitutionality of subdivision 4 of section 1194 of the Vehicle and Traffic Law, we start with the decision of the Supreme Court of the United States in Schmerber v California (384 US 757) in which that court held that withdrawal of blood from the human body for chemical analysis, although compelled, does not constitute evidence of a testimonial or communicative nature and does not, therefore, violate the Fifth Amendment privilege against self incrimination (cf. People v Craft, 28 NY2d 274). It follows from this holding that, inasmuch as a defendant can constitutionally be compelled to take such a test, he has no constitutional right not to take one.
The precise question before us is whether testimony may be admitted to establish that in fact this defendant refused to take the blood test, an issue expressly left open in Schmerber because it had not been preserved for review in that case (384 US, at pp 765-766, n 9). Realistically analyzed such testimony is relevant only in consequence of the inference it permits that defendant refused to take the test because of his apprehension as to whether he would pass it. To this extent the evidence may be characterized as "communicative or testimonial” rather than "real or physical” evidence or descriptive of an existing physical characteristic. But our inquiry does not end there. For example, evidence of flight of a defendant is admissible without question, yet the objective of offering such evidence is not to describe the geographical course the defendant followed in the particular instance or the manner in which he followed it (both of which would be irrelevant), but to permit the inference of a consciousness of guilt on his part.
Several courts which have confronted the issue have held that, inasmuch as the defendant has no constitutional right to refuse to take the test, the privilege against self incrimination is not applicable (People v Sudduth, 65 Cal 2d 543; State v Holt, 261 Iowa 1089; City of Westerville v Cunningham, 15 Ohio St 2d 121; State v Miller, 257 SC 213; State v Smith, 230 SC 164; cf. People v Ellis, 65 Cal 2d 529; People v Taylor, 73 Mich App 139).
We think the rationale should be stated more broadly. Although the evidence of the defendant’s refusal to take the test be classified as communicative or testimonial (and in our view it is immaterial for present purposes whether the partic *107 ular proof introduced is in the form of a witness’ description of the defendant’s physical behavior in refusing to submit to the test or of testimony by the witness as to the defendant’s oral or written statement refusing to do so), it should be admissible so long as the defendant was under no compulsion of any sort to refuse to take the test.
Critical to this conclusion is the recognition that the constitutional provisions on which defendant would rely (the Fifth Amendment of the United States Constitution as made applicable to the State by the Fourteenth Amendment and section 6 of article I of the New York State Constitution)[1] do not preclude receipt in evidence of self incriminating material per se; only communicative or testimonial evidence that has been compelled is excludable in a criminal proceeding by virtue of the constitutional protection. Thus, a defendant’s pretrial confession of guilt — perhaps the ultimate in self incriminating matter — is admissible in evidence if voluntarily and knowingly made and preceded by adequate warnings, if warnings were required in the setting in which the confession was made. It is only communicative or testimonial evidence that has been extracted from the defendant by compulsion in some form that falls before the constitutional proscriptions.
Compulsion need not of course be physical; it may as well be accomplished by the State’s attaching to the alternative course of action a penalty, punishment or detriment for the imposition of which no . other justification exists and of which the defendant is therefore entitled to be free. If, to avoid that unwarranted threatened consequence, the defendant produces what is self incriminating evidence, that evidence is fairly to be regarded as having been compelled and thus constitutionally inadmissible in a criminal proceeding against him.
The application of this analysis is demonstrated by consideration of the proscription against comment on a defendant’s failure to take the witness stand during a trial against him. The alternative to silence available to the defendant is his submission to interrogation by the prosecution under oath when he becomes a witness in open court — thereby exposing himself to the risk of giving testimony against himself and forfeiting the protection against such conduct which the Constitutions confer. Comment oh defendant’s failure to take the *108 stand is an impermissible " 'penalty imposed by courts for exercising a constitutional privilege. It cuts down on the privilege by making its assertion costly’ ” (Griffin v California, 380 US 609, 620 [Stewart, J., dissenting]). By like token, "it is impermissible to penalize an individual for exercising his Fifth Amendment privilege when he is under police custodial interrogation” (Miranda v Arizona, 384 US 436, 468, n 37).
Quite a different situation is presented however when the prosecution offers evidence of the defendant’s refusal to submit to a blood alcohol test. In no way in such a circumstance is there any compulsion on the defendant to refuse to take the test — the conduct which is the subject of the challenged evidence; on the contrary, the compulsion is to take the test. Submission to the test, not its evasion, was what was desired by the police officers in this case and, before them, by the Legislature in the enactment of section 1194 of the Vehicle and Traffic Law, embodying as it did two penalties or adverse consequences of refusal — license revocation and disclosure of refusal in a prosecution for operating a vehicle while under the influence of alcohol or drugs. As an alternative to refusal, defendant had a legitimate option available to him, the choice of which would have involved no forfeiture of a constitutional privilege or a statutory right — i.e., he could have submitted to the chemical test offered to him (Schmerber v California, 384 US 757, supra). Before making his determination as to which course to follow, defendant was informed, as the statute required that he be, "in clear and unequivocal language” of the effect of a refusal. The choice whether to take the test or to refuse was entirely his, as the statute makes clear. Under the procedure prescribed by section 1194 of the Vehicle and Traffic Law a driver who has initially declined to take one of the described chemical. tests is to be informed of the consequences of such refusal. If he thereafter persists in a refusal the test is not to be given (§ 1194, subd 2); the choice is the driver’s. With the advice at hand, this defendant chose to persist in his refusal, incurring the statutory consequences attendant thereon, apparently satisfied that his interests would thereby be better served than by risking disclosure of whatever the test might have revealed as to the alcoholic content of his blood. As Chief Justice Traynor so cogently observed: "A guilty party may prefer not to find himself in a situation where consciousness of guilt may be inferred from his conduct, but it can scarcely be contended that the police, *109 who seek evidence from the test itself, will tend to coerce parties into refusing to take tests in order to produce this evidence” (People v Ellis, 65 Cal 2d 529, 537, supra). In being presented with the choice defendant was confronted with no impairment of any right enjoyed by him, for he had no constitutional privilege not to submit to the chemical test and the statutory right not to take the test conferred by the Vehicle and Traffic Law was qualified by express provision for admissibility of proof of refusal in a prosecution of the type now before us.[2]
This analysis finds support in consideration of the inadmissibility of comment with respect to a defendant’s silence when he is arrested or accused of a crime. In such a situation he has the privilege under the Constitutions to remain silent and it is impermissible to penalize him for exercising that privilege. In the present case, defendant had no constitutional privilege or statutory right to refuse to take the test; hence comment on his refusal represents no infringement of privilege or right.
The conclusion we reach in this case is not inconsistent with that reached in People v Paddock (29 NY2d 504) and, earlier, in People v Stratton (1 NY2d 664), in both of which we found error in the admission of proof of a driver’s refusal to submit to a blood test on the trial of a charge which arose out of the operation of a vehicle while intoxicated. At the time those cases were decided the Vehicle and Traffic Law conferred an absolute right to refuse to submit to such a test, unqualified by any provision that evidence of such refusal might be received on trial of a charge arising out of the operation. Additionally, at the time of the Stratton case (before Schmerber) it was not yet clear that a defendant did not have a constitutional right to refuse to take a blood test. The theory of the Stratton case articulated at the Appellate Division was that “the fact that a defendant did what he had an absolute right to do cannot be used to create any unfavorable inference against him” (286 App Div, at p 326). We affirmed the disposition at the Appellate Division (1 NY2d 664).
*110 As Judge Jasen pointed out in his concurring opinion in the Paddock case, by the time that case was before us it had been determined by the Schmerber decision that there was no constitutional right to refuse to submit to a blood test. The holding of inadmissibility of evidence of defendant’s refusal to submit had then to be predicated only on the unqualified statutory right of refusal conferred by section 1194 of the Vehicle and Traffic Law as it then read (29 NY2d, at pp 505-506). Inasmuch as that statutory right has now been modified and is qualified by the provision enacted by chapter 351 of the Laws of 1973 making evidence of refusal admissible, the decisions in Stratton and Paddock are no longer determinative.
In a different aspect, now that the authority for admission of the evidence is expressly embodied in the only statutory predicate for refusing to take the test, the admissibility of refusal evidence may also be viewed as a permissible condition reasonably attached to the grant of permission to operate a motor vehicle on the highways of the State. No physical characteristic or condition could be more closely related to incompetence to operate a motor vehicle than inebriation, and no aspect of motor vehicle regulation can be more important to the welfare of both operators and the public than keeping inebriated drivers off the public highways.
We conclude that the evidence of defendant’s persistent refusal to take the test was properly admitted, that the jury was correctly charged that it could consider such evidence, and that subdivision 4 of section 1194 of the Vehicle and Trafile Law is not violative of a defendant’s rights under either Federal or New York State Constitution.
Accordingly, the order of the Appellate Term should be reversed, and, inasmuch as the reversal in that court was on the law, the case remitted to that court for determination of the facts.

. The protection against self incrimination in both Constitutions is identical: "No person * * * shall be compelled in any criminal case to be a witness against himself’.

. Proof, of which there is none here, that might be explanatory of a particular defendant’s refusal to take the test unrelated to any apprehension as to its results (as, for instance, religious scruples or individual syncopephobia) should be treated not as tending to establish any form of compulsion but rather as going to the probative worth of the evidence of refusal (Commonwealth v Robinson, 229 Pa Super Ct 131, 148-149; but see State v Andrews, 297 Minn 260). Thus, a jury might in such circumstances reject the inference of consciousness of guilt which would otherwise have been available.