OPINION OF THE COURT
Wachtler, J.
The primary question on this appeal is whether a blood alcohol test of a hospitalized driver, who was unconscious or so disoriented that the police were unable to obtain his consent, was made in violation of section 1194 of the Vehicle and Traffic Law. The trial court suppressed the test results holding that the statute requires express consent and that a contrary interpretation would violate the equal protection rights of the unconscious driver. The Appellate Division reversed finding no statutory or constitutional bar to admissibility. The defendant appeals claiming the trial court properly suppressed. He also argues that the prosecutor possesses other evidence of intoxication and thus had no right to appeal the suppression order in this case.
At approximately 6:00 P.M. on March 3, 1979 a car driven by the defendant collided with another car fatally injuring the woman driving that vehicle. The defendant and his three passengers were removed to nearby hospitals. After examining the accident scene the police spoke to one of the defendant’s passengers who appeared to be intoxicated. At approximately 9:00 p.m. the police went to see the defendant who was then in another emergency room being treated for various injuries including lacerations of the head. As the police approached the defendant they detected an odor of alcohol, observed that his eyes were bloodshot and watery and concluded that he was intoxicated. They also concluded, and it was found as a fact at the hearing, that the defendant was so disoriented as to be incapable of giving or refusing consent to a blood test. Thus, unable to obtain his consent the police simply asked the attending physicial to take a blood sample. This was done without incident and subsequent analysis showed that defendant’s blood contained .18% by weight of alcohol. The defendant was indicted for criminally negligent homicide, driving while intoxicated and related offenses.
Prior to trial the defendant moved to suppress the blood *594 test results on the grounds that they were obtained without his consent in violation of section 1194 of the Vehicle and Traffic Law and his constitutional rights under the Fourth Amendment and the equal protection clause of the Fourteenth Amendment. After a hearing the court found that it was, in fact, impossible for the police to obtain defendant’s consent because of his condition at the time of the test. Nevertheless the court concluded that under the statute blood test results are not admissible unless the defendant “expressly consented” to the test. The court also agreed with the defendant that if the statute were construed to dispense with the need to consent in the case of an unconscious driver it would violate the defendant’s constitutional right of equal protection.
The People appealed the suppression order (CPL 450.20, subd 8) and certified that the remaining proof was not sufficient to obtain a conviction (CPL 450.50, subd 1). The Appellate Division reversed concluding that section 1194 literally read did not require the driver’s express consent to a blood test and that its history showed that the Legislature did not intend lack of consent to be a bar to the admissibility of blood test results when the driver was unconscious or otherwise incapable of giving or refusing consent. The court also found that there was a basis for distinguishing between conscious drivers and unconscious drivers and thus no denial of equal protection. The defendant’s contention that the suppression order was not appealable because the prosecutor had other evidence of intoxication was found to be without merit in view of the prosecutor’s certification that the suppressed evidence was essential to his case. On these points we agree with the Appellate Division.
 Initially it should be noted that taking the blood sample in this case did not involve any violation of the defendant’s constitutional rights under the Fourth or Fifth Amendments. Taking a driver’s blood for alcohol analysis does not call for testimonial compulsion prohibited by the Fifth Amendment (Schmerber v California, 384 US 757, 760-765; People v Thomas, 46 NY2d 100). Nor does it involve an unreasonable search under the Fourth Amendment when there is probable cause, exigent circumstances and a rea *595 sonable examination procedure (Schmerber v California, supra, pp 768-772). So long as these requirements are met —and the defendant does not suggest that they were not met in this case — the test may be performed absent defendant’s consent and indeed over his objection without violating his Fourth Amendment rights (Schmerber v California, supra, p 759).
Thus the defendant’s contention that the test made without his consent was illegal, depends solely upon his interpretation of section 1194 of the Vehicle and Traffic Law. Subdivision 1 of that statute establishes the general rule that “Any person who operates a motor vehicle in this state shall be deemed to have given his consent” to such a test. Subdivision 2 contains an exception which is only applicable when the driver refuses to consent. It states “If such person having been placed under arrest or after a breath test indicates the presence of alcohol in his system and having thereafter been requested to submit to such chemical test, refuses to submit to such chemical test, the test shall not be given”. The statute also provides penalties for the driver who refuses to submit after being advised of the consequences of refusal (see subds 2, 4; People v Thomas, supra, p 108).
Literally read the statute was not violated in this case because the defendant had not refused consent. Of course the result would be different if the Legislature had provided that no test could be given unless the driver expressly consents to it. Under such a statute consent would be a prerequisite and the unconscious or incapacitated driver could not be given a blood test because of the impossibility of obtaining his consent. However, subdivision 2 cannot be read as requiring the driver’s express consent because that would effectively nullify the consent implied in subdivision 1 or at least make the statute inherently inconsistent. In any event that is not the way the Legislature worded the exception and the history of the statute shows that the wording was carefully chosen with this situation in mind. The legislative committee responsible for this statute noted in its report: “In the case of an unconscious individual, a chemical test can be administered since he is *596 deemed to have given his consent when he used the highway. It is not necessary that a person be given the opportunity to revoke his consent. The only reason the opportunity to revoke is given is to eliminate the need for the use of force by police officers if an individual in a drunken condition should refuse to submit to the test” (Report of Joint Legislative Committee on Motor Vehicle Problems, McKinney’s 1953 Session Laws of NY, pp 1912-1928). Indeed it would have been odd if the Legislature had provided that the blood test and the penalties for refusal designed to remove drunken drivers from the road would become inapplicable when the driver has, by excessive drinking or injuries sustained in a related accident, made himself incapable of consenting or refusing to submit to the test.
The distinction drawn between the conscious driver and the unconscious or incapacitated driver does not offend the equal protection clause. It was reasonable for the Legislature, concerned with avoiding potentially violent conflicts between the police and drivers arrested for intoxication, to provide that the police must request the driver’s consent, advise him of the consequences of refusal and honor his wishes if he decides to refuse, but to dispense with these requirements when the driver is unconscious or otherwise incapacitated to the point where he poses no threat. Indeed there is a rational basis for distinguishing between the driver who is capable of making a choice and the driver who is unable to do so. Thus, denying the unconscious driver the right to refuse a blood test does not violate his right to equal protection.
As noted the defendant also contends that the prosecutor had no right to appeal the suppression order because the defendant believes that the remaining evidence is sufficient to sustain a conviction. The statute provides however, that the prosecutor may appeal not only where the remaining proof is legally insufficient but also where he certifies that it is “so weak in its entirety that any reasonable possibility of prosecuting such charge to a conviction has been effectively destroyed” (CPL 450.50, subd 1, par [b]). The quoted portion obviously calls for a personal evaluation which can only be made by the prosecutor who is a better *597 judge than his opponent or an appellate court of his chance of succeeding at trial with the remaining proof. Nor is there any general need to check the accuracy of the prosecutor’s assessment since the statute itself discourages a prosecutor from overestimating his need for the suppressed evidence. Once he files the certification and takes an appeal, he will not be permitted to change his position and try the defendant on other proof if the suppression order is upheld on appeal (CPL 450.50, subd 2; Matter of Forte v Supreme Ct. of State of N. Y., 48 NY2d 179). Thus the prosecutor’s certification is sufficient; he need not expose his case for appellate confirmation of his likelihood of obtaining a conviction without the suppressed proof.
Accordingly, the order of the Appellate Division should be affirmed.