OPINION OF THE COURT
Peter J. Benitez, J.
Defendant is charged in an information with operating a motor vehicle while under the influence of alcohol (Vehicle and Traffic Law § 1192 [2], [3]). Defendant previously moved to dismiss the Vehicle and Traffic Law § 1192 (2) charge, arguing that Vehicle and Traffic Law § 1194 requires that a chemical breathalyzer test to determine blood alcohol level must be administered within two hours after arrest for its result to be admissible, and, in this case, the breathalyzer test was administered more than two hours after his arrest. The People argued that, as defendant expressly consented to having the test performed, it did not have to be performed within two hours after arrest to be admissible.
This court held, in People v Dillin (NYLJ, Oct. 5, 1990, at 23, col 3 [Crim Ct, NY County]) that the Vehicle and Traffic Law did not impose any time restriction on a chemical test administered with a defendant’s express consent. However, as defendant had limited his motions challenging the breathalyzer test solely to the issue of the applicability of the two-hour provision of Vehicle and Traffic Law § 1194 on the belief that section 1194 required dismissal of the charge, this court granted defendant leave, "should he have a factual basis which can be alleged” (supra, at 25, col 2), to challenge the voluntariness of his alleged express consent. In doing so, this court did not express any opinion as to what factual or legal basis could be alleged in support of a motion challenging the voluntariness of defendant’s consent to have the test administered.
Now, defendant challenges his consent to have the chemical *313 test administered, alleging that his consent was "involuntary”. Specifically, defendant asserts that the videotape provided to him by the People confirms that, after his arrest, he was taken to the precinct and told he was going to be given a chemical test. Defendant further alleges that the officer told him: "If you refuse to submit to the chemical test or any portion thereof it will result in the immediate suspension and subsequent revocation of your license whether or not you are found guilty of the charges for which you have been arrested. If you refuse to take the chemical test or any portion thereof it will be introduced into evidence at any trial or procedural hearing for which you have been arrested.” Defendant asserts that, following these statements, the officer asked defendant whether he was willing to take the test and defendant responded, "yes”. Defendant additionally asserts that at no time was he given "Miranda warnings”. Defendant argues that his consent to take the breathalyzer test was involuntary as having been obtained without the benefit of "Miranda warnings”, and as a result of the "coercive” nature of the warning given by the police officer concerning the consequences of a refusal to take the test.
The People respond by disputing defendant’s assertion that Miranda warnings were not given defendant upon his arrest and, while conceding defendant’s version of the statements made to him by the arresting officer concerning the consequences of a refusal, argue that the officer's recitation of statutorily required warnings concerning a refusal to submit to a chemical breathalyzer test does not, as a matter of law, render defendant’s subsequent consent involuntary.
 For the reasons set forth below, this court holds that, as a matter of law, the facts alleged by defendant do not constitute legal grounds for vitiating defendant’s consent to take the test. Accordingly, defendant’s motion is denied.
A. Defendant’s "Miranda” Claim:
The Court of Appeals has stated that the administration of a chemical test to determine blood alcohol level without a defendant’s consent, as permitted by statute within two hours after arrest, or with his consent, does not involve any violation of a defendant’s rights under the Fourth or Fifth Amendments. (People v Kates, 53 NY2d 591, 594-595 [1981].) This conclusion was based on the determination that the test result did not constitute testimonial evidence implicating the privi *314 lege against self-incrimination nor did the test itself violate constitutional protections against unreasonable searches and seizures. (See, Schmerber v California, 384 US 757, 761, n 5 [1966]; People v Kates, supra.)
Accordingly, by consenting to the administration of a chemical test, whether or not he has been advised of the consequences of a refusal, a defendant is not being compelled to incriminate himself in violation of the constitutional privilege against self-incrimination. Therefore, Miranda warnings need not be given prior to his consenting to the administration of the test. (See, People v Craft, 28 NY2d 274 [1971]; People v Hochheimer, 119 Misc 2d 344, 352-354 [Sup Ct, Monroe County 1983]; People v Rosario, 136 Misc 2d 445, 449-450 [Crim Ct, Bronx County 1987], and the cases cited thereat.)
B. Defendant’s Coercion Claim:
Additionally, defendant claims that the warnings given to him by the police officer concerning the adverse consequences should he refuse to submit to the chemical test coerced his consent to have the test performed. This court must determine whether the statutorily required refusal warnings are coercive and, if so, whether, as a matter of law, they improperly induce a waiver or impair the exercise of any constitutional or statutory rights.
It appears that only one court has considered the constitutional implications of the Vehicle and Traffic Law warnings as they relate to a consent to submit to the test. (See, People v Hochheimer, supra.) That court held that the warnings do not coerce a consent in violation of a defendant’s constitutional rights. No court appears to have addressed the issue of whether the warnings coerce a waiver or impair the exercise of any statutory rights.
Under New York law, where the police have reasonable grounds to believe that a motorist is operating a vehicle while impaired or intoxicated by the consumption of alcohol in violation of Vehicle and Traffic Law § 1192, a chemical test to determine blood alcohol level may be administered without the defendant’s consent if he is unconscious or is unable to consent or refuse due to the extent of his injuries or intoxication. (See, Vehicle and Traffic Law § 1194 [2] [a] [1]; People v Kates, supra, at 595-596.) This interpretation of the statutory authorization to administer tests without a motorist’s express *315 consent is based on Vehicle and Traffic Law § 1194 (2) (a), which provides that all motorists who operate vehicles on the roads of this State are "deemed to have given consent” to the administration of a chemical test to determine blood alcohol level.
However, Vehicle and Traffic Law § 1194 (2) (b) mandates a different procedure where the arrested motorist is conscious and able to consent or refuse to have the test administered. In such circumstances, while the law requires a motorist to submit to a chemical test, the police officer must request that the defendant submit to the test and advise him of the consequences of a refusal, those being the immediate suspension and ultimate revocation of his license and the admissibility of his refusal in any proceeding relating to the arrest. If the defendant refuses to have the test administered, it may not be involuntarily administered. Rather, under certain circumstances, a police officer may seek a court order authorizing the administration of the test.
New York’s statutory provisions requiring a motorist to submit to the administration of the chemical test or suffer the adverse consequences of a refusal are designed, consistent with constitutional rights, to enable the authorities to remove intoxicated motorists from the roads by either establishing the motorist’s level of intoxication or revoking his privilege to drive should he not agree to be tested. Accordingly, our law clearly envisions that the threat of license revocation will induce submission to the test. By expressly consenting to have the test administered, a defendant is making a choice to submit to the required testing rather than refuse and suffer the adverse consequences of that refusal. However, by expressly consenting to have the test administered, a defendant is not consenting to constitutionally prohibited police action, as Schmerber v California (384 US 757, supra) and People v Kates (53 NY2d 591, supra) make it clear that the Constitution permits the administration of a blood/breath alcohol level test without a defendant’s consent or even over his objection.
Nor is he waiving any statutory right by so consenting. Our law requires that a motorist submit to the test where the statutory prerequisites of reasonable grounds to believe that he is driving while impaired or intoxicated are present but, rather than authorizing the government to use physical force to obtain compliance, allows a motorist to refuse and forfeit his right to operate a vehicle on the roads. The forgoing of that "right” to refuse is, therefore, not the waiver or impair *316 ment of a statutory right which, when exercised or asserted, cannot be subject to any penalty or forfeiture. As the Court of Appeals stated in People v Thomas (46 NY2d 100, 109 [1978]): "In being presented with the choice [to submit to the test or refuse and have his license revoked and his refusal used as evidence of guilt] defendant was confronted with no impairment of any right enjoyed by him, for he had no constitutional privilege not to submit to the chemical test and the statutory right not to take the test conferred by the Vehicle and Traffic Law was qualified by express provision for admissibility of proof of refusal”. Accordingly, principles of voluntariness applicable to the waiver of "rights” for which no penalty can be attached when exercised, such as constitutional or certain statutory rights, are not applicable here.
Based on the foregoing analysis, this court holds that, in a prosecution for Vehicle and Traffic Law § 1192, a consent induced by the Vehicle and Traffic Law warnings concerning the consequences of a refusal is valid, as such warnings do not coerce the waiver or result in the impairment of either constitutional or statutory rights. Decisions of other courts have reached the same conclusion as it relates to constitutional rights. (See, People v Hochheimer, 119 Misc 2d 344, supra.) Also, other courts have implicitly recognized that the Vehicle and Traffic Law warnings do not induce a waiver or result in an impairment of any statutory rights. For example, while not directly addressing a claim that the Vehicle and Traffic Law warnings improperly coerce consent to have the test performed, several courts have held that a consent to submit to the test, induced by the statutory penalty of license revocation upon a refusal, is valid and the test results are admissible evidence. (See, People v Slater, 166 AD2d 828, 829-830 [3d Dept 1990], and the cases cited thereat.)
Similarly, a consent given after an initial refusal and prompted by the police officer’s having obtained a court order authorizing the involuntary administration of a blood test was held to be voluntary in People v Morse (127 Misc 2d 468, 475 [Essex County Ct 1985]). In that case, the court noted the defendant avoided the "liability” of a license revocation based upon the initial refusal by consenting to have the test administered once it was clear that the test would be administered pursuant to court order.
Additionally, the fact that the test here was administered more than two hours after arrest is irrelevant to the voluntariness of defendant’s consent. As this court has previously *317 held in this case, that the Vehicle and Traffic Law did not prohibit the administration or admissibility of a consensual test performed more than two hours after defendant’s arrest, defendant was not consenting to statutorily prohibited action by the police. (See, People v Dillin, NYLJ, Oct. 5, 1990, at 23, col 3, supra.) While the police could not have involuntarily administered the test without a court order, because defendant was able to consent or refuse and tests may only be administered pursuant to the "deemed consent” within two hours after arrest where the motorist is unconscious or unable to consent or refuse (see, People v Kates, supra), the right of the police to administer and the admissibility of a consensual test more than two hours after arrest was no less than their right to administer such a test within two hours after arrest or the admissibility of such a test.* Accordingly, this court respectfully disagrees with the dicta of the court in People v Wade (118 Misc 2d 330, 337, 338 [Broome County Ct 1983]), which suggests that, where the police have no statutory right to involuntarily administer the test, a consent to submit to the test is a "waiver of an individual’s fundamental constitutional right not to have his person unreasonably searched, seized or intruded upon” and, to be valid, requires proof that the defendant voluntarily relinquished and abandoned a " 'known right or privilege’ ”.
Finally, while implicitly recognizing that the Vehicle and Traffic Law warnings concerning the consequences of a refusal do not render a consent to have the test administered involuntary, courts have held that the consent to submit must be knowingly, freely and voluntarily given. (See, People v Slater, supra, at 830; People v Verdile, 119 AD2d 891 [3d Dept 1986].) As is clear from those decisions, a consent may lawfully be obtained by advising a motorist of the statutory consequences *318 of a refusal, but may not be obtained from a defendant who is incapable of understanding the Vehicle and Traffic Law warnings, by the use or threatened use of physical force not authorized by court order, or by other improper coercive methods. Therefore, only such improper coercive techniques render a consent involuntary. The Vehicle and Traffic Law warnings do not render a consent to submit to the chemical test involuntary.
Defendant here has not alleged any coercive actions used to obtain his consent other than the police officer’s giving the required warnings concerning the consequences of a refusal. Accordingly, as a matter of law, his consent was not involuntary. Defendant’s challenge to the admissibility of the results of the chemical breathalyzer test based on the giving of those warnings is, therefore, denied.

 This court’s analysis is distinguishable from that of the court in People v Sesman (137 Misc 2d 676, 683-684 [Grim Ct, Bronx County 1987]). In Sesman, the court held that a defendant cannot "waive” what that court found to be a statutory requirement that a chemical test be administered within two hours after arrest to be admissible. This court previously held, in this case, that the two-hour provision of Vehicle and Traffic Law § 1194 is only applicable to tests involuntarily administered pursuant to the statute’s "deemed consent” authorization and, therefore, does not require the suppression of a chemical test administered with a defendant’s consent more than two hours after arrest. (See, People v Dillin, NYLJ, Oct. 5, 1990, at 23, col 3.) This court’s conclusion was not based on "waiver” principles. Rather, it was based on an analysis of Vehicle and Traffic Law § 1194 and case law which concluded that the two-hour provision was not applicable to tests administered with a defendant’s consent.