DiFIORE, Chief Judge (dissenting).
In this case we are once again called to interpret an enigmatic statute as to its precise parameters in obtaining evidence for criminal prosecutions of intoxicated motorists. Specifically, we are asked to pick up where this Court left off in People v. Atkins, 85 N.Y.2d 1007, 630 N.Y.S.2d 965, 654 N.E.2d 1213 [1995], and answer whether the two-hour rule in Vehicle and Traffic Law § 1194(2)(a), which governs the deemed consent scenario, nonetheless applies to the administration of refusal *1042 warnings to a motorist who thereafter expressly consents to a breath test more than two hours from arrest. Because the only interpretation consistent with the purpose of the statute, our precedent, and the record before us is that the statutory two-hour rule has no such applicability to the refusal warnings provided to the motorist who consents to a breath test, I respectfully dissent.
On October 18, 2014, during the early morning hours, officers were directed to a group of people who had witnessed the driver of a white Cadillac Escalade hit their parked vehicle a few minutes earlier. The group pointed the officers in the direction in which the driver had fled the scene, and within approximately ten blocks, officers came upon the stopped white Escalade. The driver, the defendant herein, smelled of alcohol and was unsteady on his feet. Police arrested defendant at 3:12 a.m., transported him to the police precinct and, once there, advised him of his Miranda rights. Following questioning, and more than two hours from arrest, at approximately 5:50 a.m., an officer asked defendant, "Will you take this [breath] test?" Initially, defendant said no. The officer warned defendant that if he did not take the test, his license would be suspended and ***355 his refusal would be used against him as evidence in court.[1] Defendant consented and provided the breath test, which measured his blood alcohol content (BAC) at .09%-above the legal limit.
Defendant was charged with reckless endangerment in the second degree, reckless driving, and three counts of operating a motor vehicle while under the influence of alcohol. Defendant moved to suppress the results of the breath test on the allegation that the police unlawfully arrested him. During the suppression hearing, defendant continued to argue that the test results were inadmissible as the result of an unlawful seizure of his person,[2] but in closing arguments also argued that the suppression court was bound by People v. Rosa, 112 A.D.3d 551, 977 N.Y.S.2d 250 (1st Dept. 2013), wherein the intermediate appellate court in finding the defendant's consent to the chemical test voluntary, stated that when more than two hours pass from arrest, a defendant should not be warned that if he refuses to take a **261 breath test, his driver's license will be suspended and the refusal can be used against him in court ( id. at 552, 977 N.Y.S.2d 250 ). The People disagreed with the effect of the dicta in Rosa and relied on a Department of Motor Vehicles (DMV) change in policy since the 2011 conviction in Rosa, allowing the agency to revoke licenses where a refusal fell outside the two-hour rule. Both the judicial hearing officer and nisi prius agreed they were bound by the precedent of Rosa, and suppressed the evidence of the chemical test.
On appeal to this Court, the crux of defendant's argument is that because the refusal warnings given to him were based *1043 on allegedly erroneous information-namely that the DMV had the authority to revoke defendant's license under the circumstances-his consent following those warnings was coerced. However, based on the undisputed evidence in the hearing record, ***356 the refusal warnings were not a misapplication of law at all. During the suppression hearing, the most decisive period in this case's history, the People argued that Rosa was inapplicable because DMV policy had changed since the facts underlying that case. In 2012, the DMV amended its policy to allow revocation or suspension of a motorist's license for refusing to submit to a breath test, even if such refusal is given more than two hours from arrest (see 2012 NY St Dept of Motor Vehicles Op No. 1-12 at 2). Defendant never once challenged the People's assertion that the controlling refusal warnings as amended by DMV policy were correct as a matter of fact and law, and that defendant's consent was not coerced due to those warnings and must be accepted as voluntary (see People v. Graham, 25 N.Y.3d 994, 996, 10 N.Y.S.3d 172, 32 N.E.3d 387 [2015] ). Voluntariness of consent to a search is a question of fact to be determined by the surrounding circumstances (see People v. Gonzalez, 39 N.Y.2d 122, 124, 383 N.Y.S.2d 215, 347 N.E.2d 575 [1976] ; Schneckloth v. Bustamonte, 412 U.S. 218, 227, 93 S.Ct. 2041, 36 L.Ed.2d 854 [1973] ) and we are bound by the factual record before the hearing court (see People v. Wheeler, 2 N.Y.3d 370, 373, 779 N.Y.S.2d 164, 811 N.E.2d 531 [2004] ). Because it was undisputed that the DMV changed its policy to allow revocation of a license in the event a breath test is refused more than two hours after the arrest-and defendant never challenged that legal authority-our inquiry into alleged coerciveness as a result of the warnings given ends. The majority cannot simply sidestep the fact that defendant in the trial court never disputed the DMV's authority in this area and thus conceded the accuracy of the DMV warnings leading to his consent, allowing the People's legal argument before that court to stand without contradiction.
The cooperation of a licensed motorist in submitting to a chemical test upon arrest for driving while under the influence of alcohol is necessary for the successful administration of a breath test, thus prompting all fifty states to enact "implied consent" laws to secure that cooperation from motorists as a condition of their license to drive on the public highways (see Birchfield v. North Dakota, 579 U.S. ----, 136 S.Ct. 2160, 2168-2169, 195 L.Ed.2d 560 [2016] ). As a pioneer in combating the growing menace of drunk driving since the middle of the last century, New York designed the nation's first deemed consent law to set up a paradigm for evidence collection by providing that the privilege of driving required submission to a chemical test under penalty of a revocation of the license (see Interim Rep of N.Y. St Joint Legis Comm on Motor Veh Problems, 1953 N.Y. Legis Doc No.
***357 25 at 11-18). The sole purpose of the statute, now section 1194, is compulsory submissions to chemical **262 tests from motorists. It is an evidence gathering measure specifically created by the legislature in recognition of the basic difficulty of proving the BAC of drivers at trial without such tests (see id. at 12-13). For that reason, the legislature did not-and this Court has never until today-set up arbitrary obstacles to this necessary evidence collection (see People v. Ward, 307 N.Y. 73, 77, 120 N.E.2d 211 [1954] ["(T)he Committee's purpose, obviously, was neither to circumscribe nor limit the use of such tests in evidence."] ).[3] *1044 The legislative history provides no basis to expand the limitations of the two-hour rule, which is tethered only to the deemed consent scenario. Originally, the two-hour rule was an evidentiary standard concerned with probativeness (see L 1941, ch 726, eff July 1, 1941). Especially at the statute's inception, when technological advancements in this area were less developed, a prompt breath test was presumably a more accurate measurement of BAC (see People v. Washington, 23 N.Y.3d 228, 231, 989 N.Y.S.2d 670, 12 N.E.3d 1099 [2014] ), the legal limit of which has since been reduced by nearly half. In purposely placing the two-hour rule in the section 1194 provisions devoted solely to evidence collection in deemed consent cases, as opposed to other section 1194 provisions or section 1195, governing evidence admissibility and its probative value, the legislature signaled the two-hour rule does not define either the admissibility or probative value of evidence taken on court order pursuant to section 1194 or upon express consent of the motorist (see Atkins, 85 N.Y.2d at 1008-1009, 630 N.Y.S.2d 965, 654 N.E.2d 1213 ). Indeed, as modern breath test devices "can detect the ***358 presence of alcohol more quickly and accurately than before" and "are generally regarded as very reliable" ( Birchfield, 579 U.S. ----, 136 S.Ct. at 2168 ), linking the probative value of the test to the passage of two hours is arbitrary as the BAC reading from the test alone determines its probativeness (see Vehicle and Traffic Law § 1195[2] ).
Contrary to the majority's resolution of the issue before us, the placement of two hours in the deemed consent provision was not meant to automatically suppress evidence of the circumstances surrounding requests of a motorist to expressly consent to a breath test because that would ignore both the general purpose and spirit of the statute, as well as our precedent. Instead, the intent was to temporally limit police in obtaining warrantless blood sample tests beyond two hours from unconscious or incapacitated drivers, a factual scenario existing at the time of enactment but now **263 curtailed by Birchfield v. North Dakota see 579 U.S. at ----, 136 S.Ct. at 2186 ; People v. Kates, 53 N.Y.2d 591, 595, 444 N.Y.S.2d 446, 428 N.E.2d 852 [1981] ["(T)he history of the statute shows that the wording was carefully chosen with this situation in mind"] ). In the scenario of an individual who can only be deemed to consent to a chemical test, a two-hour temporal parameter from the point of arrest for police to conduct compulsory tests was reasonable.
Moreover, to the extent the majority maintains this is somehow a refusal case (see majority op. at 347-349, 350-353, 78 N.Y.S.3d at 254-56, 256-59, 102 N.E.3d at 1036-37, 1038-41) it is mistaken. This is *1045 a consent case with actual evidence of a breath test provided by the motorist. Under section 1194(2)(f), a defendant's refusal-which is inextricably linked to the revocation of a license and more readily understood as a revocation of the deemed consent created by the legislature as a condition of a license grant-is admissible at trial "only upon a showing that the person was given sufficient warning, in clear and unequivocal language, of the effect of such refusal and that the person persisted in the refusal" ( Vehicle and Traffic Law § 1194[2][f] [emphasis added] ). This evidence is the second legislative penalty of refusal to take the compelled test, the first being the penalty of a revocation of a license (see People v. Thomas, 46 N.Y.2d 100, 108, 412 N.Y.S.2d 845, 385 N.E.2d 584 [1978], appeal dismissed 444 U.S. 891, 100 S.Ct. 197, 62 L.Ed.2d 127 [1979] ). The refusal is defined by the statute as one that must follow the giving of requisite warnings and one whereby a defendant persistently refuses to submit to a compulsory test. Then the evidence of the refusal is admitted pursuant to section 1194(2)(f) as an inference of guilt. Obviously, refusal ***359 evidence is entirely superfluous when a defendant has consented to a breath test and the BAC results speak directly to the issue of guilt. Further, the position that advising defendant that his refusal could be used as evidence is somehow coercive is also without merit. As we have held, a motorist has no constitutional right to refuse, nor does a motorist enjoy an absolute right of refusal previously given by statute, making the majority's continued reliance on People v. Paddock, 29 N.Y.2d 504 (1971) misplaced (see majority op. at 352, 78 N.Y.S.3d at 258-59, 102 N.E.3d at 1040; see also Thomas, 46 N.Y.2d at 110, 412 N.Y.S.2d 845, 385 N.E.2d 584 ["Inasmuch as that statutory right has now been modified ... making evidence of refusal admissible, the decision[ ] in ... Paddock [is] no longer determinative."] ).
Here, defendant did not contest the DMV's authority to revoke a license beyond the two-hour rule applicable in deemed consent scenarios. A motorist's right of refusal to take a chemical test is neither compelled nor constitutionally privileged, and the DMV's revocation policy is permissible as a condition of the license to drive. Accordingly, the evidence of that refusal is admissible under the general rule that all relevant evidence is admissible unless its admission violates some exclusionary rule (see People v. Scarola, 71 N.Y.2d 769, 777, 530 N.Y.S.2d 83, 525 N.E.2d 728 [1988] ; People v. Berg, 92 N.Y.2d 701, 706, 685 N.Y.S.2d 906, 708 N.E.2d 979 [1999] ["(I)f evidence is constitutionally permissible, the absence of authorization in a statute does not make it impermissible."]; Thomas, 46 N.Y.2d at 109, 412 N.Y.S.2d 845, 385 N.E.2d 584 ["(D)efendant had no constitutional privilege or statutory right to refuse to take the test; hence comment on his refusal represents no infringement of privilege or right."] ). As the warning of the consequences **264 of a refusal in this case was legally accurate, a claim of coercion is unsound.
Here, the videotape demonstrated defendant was asked by the officer to take the test. He said no once. Officers then gave him the DMV refusal warning and defendant consented to take the breath test. Like any consent scenario, upon being asked to provide evidence by the police, defendant elected to take the breath test after being made aware of his options. Therefore, at bottom this is an express consent case and the consent was voluntary (compare Atkins, 85 N.Y.2d at 1008, 630 N.Y.S.2d 965, 654 N.E.2d 1213, with People v. Smith, 18 N.Y.3d 544, 547, 942 N.Y.S.2d 426, 965 N.E.2d 928 [2012] ).
The statute clearly provides three different methods of obtaining compulsory *1046 breath tests depending on the different factual scenarios confronting police in encountering intoxicated motorists. To be sure, the first such compulsory test is the ***360 chemical field test, provided in the "field" and requiring no warnings or consent before its administration (see Vehicle and Traffic Law § 1194[1][b] ). The statute also has always made the distinction between conscious drivers capable of cooperating and unconscious drivers or those too drunk to cooperate:
"In the case of an unconscious individual, a chemical test can be administered since he is deemed to have given his consent when he used the highway. It is not necessary that a person be given the opportunity to revoke his consent. The only reason the opportunity to revoke is given is to eliminate the need for the use of force by police officers if an individual in a drunken condition should refuse to submit to the test" (Interim Rep of N.Y. St Joint Legis Comm on Motor Veh Problems, 1953 N.Y. Legis Doc No 25 at 35 [emphasis added]; see Kates, 53 N.Y.2d at 595-596, 444 N.Y.S.2d 446, 428 N.E.2d 852 [noting that the legislature deliberately distinguished between the conscious driver and the incapacitated driver] ).
On that premise, the second compulsory test is provided in section 1194(2)(a) and covers the deemed consent of motorists to submit to a demand for a chemical test under penalty of losing their license and incorporates the two-hour rule. A persistent refusal triggers section 1194(2)(b) requiring a report of refusal to submit to a chemical test when a motorist revokes the statutory consent presumed from the license to drive. Lastly, the third compulsory test is set forth in section 1194(3), which provides for a court order for a compulsory chemical test without any two-hour rule. By this statutory scheme, the refusal warnings in section 1194(2)(b) -given to motorists who persist in revoking the deemed consent presumed to be given by any licensed driver-serve the purpose of alerting the driver to the consequences of blocking the compulsory method of evidence collection laid out in section 1194(2)(a).
The two-hour rule, however, has no applicability outside the deemed consent scenario.[4] That sound explanation furthers the object, spirit, and purpose of the statute (see McKinney's Cons Laws of NY, Book 1, Statutes § 92), and is also compatible with our decades of precedent on this very subject. Indeed, we have long narrowed the applicability of the two-hour rule to the ***361 confines of deemed consent.[5] **265 To be sure, in Atkins, we held that a defendant may provide express consent to undergo a chemical test at any time, thus rendering the two-hour requirement irrelevant (see 85 N.Y.2d at 1009, 630 N.Y.S.2d 965, 654 N.E.2d 1213 ; see also Smith, 18 N.Y.3d at 548 n. 1, 942 N.Y.S.2d 426, 965 N.E.2d 928 [2012] ["Although time is of the essence in obtaining chemical test evidence, if a defendant agrees to take the test, there is no per se statutory bar on admission of the results if the test was administered more than two hours after *1047 defendant's arrest."] [emphasis added] ). Additionally, in People v. McGrath, we affirmed the Appellate Division decision holding the two-hour rule inapplicable to section 1194(3) on tests obtained by court orders (see 135 A.D.2d 60, 62, 524 N.Y.S.2d 214 [2d Dept. 1988], affd for reasons stated below 73 N.Y.2d 826, 537 N.Y.S.2d 480, 534 N.E.2d 318 [1988] ["Nothing in the unambiguous language of [ section 1194(2)(a) ] indicates that the Legislature intended to impose a specific time limitation on the performance of court-ordered chemical tests. The omission of such a restriction reflects a rational legislative determination that it was unnecessary."] ). Finally, in People v. Finnegan, 85 N.Y.2d 53, 59, 623 N.Y.S.2d 546, 647 N.E.2d 758 (1995), we held "[n]othing in the unambiguous language of [the statute] indicates that the Legislature intended to cross-reference or incorporate" the two-hour rule to section 1194(4) on independent physician tests. Therefore, we have already largely confined the statutory two-hour rule to the deemed consent scenario and nothing more.[6] ***362 Here, the issue framed is the allegedly illegal seizure by police of the evidence of a breath test because it was taken without defendant's voluntary consent (see People v. Kuhn, 33 N.Y.2d 203, 208-209, 351 N.Y.S.2d 649, 306 N.E.2d 777 [1973] ). Particularly in light of Birchfield's holding that a warrantless breath test is a reasonable search incident to arrest within the meaning of the Fourth Amendment for intoxicated motorists, any issue of consent here is somewhat academic as one's consent is not required for a search and seizure (see **266 579 U.S. at ----, 136 S.Ct. at 2184 ).[7] In any event, this is neither a *1048 deemed consent case nor a persistent refusal case-a distinction that has muddled this litigation at every stage. We are dealing instead with a defendant's cooperation in expressly consenting to take a breath test after being provided appropriate warnings of the consequences of his refusal to do so. We have held that the best practice for police is to warn defendants of options, as well as their right of refusal so that a defendant's decision to take a breath test is made knowingly and voluntarily (see Ward, 307 N.Y. at 78, 120 N.E.2d 211 ). In this case, police asked defendant to take the breath test and provided the refusal warnings as explained in the DMV's revised policy, advising defendant that his license would be revoked even though more than two hours had passed since his arrest, and a refusal can be used as evidence against him. As a result, defendant made a choice and expressly consented to the breath test. Based on the record, the statute, and our precedent, the statutory two-hour rule does not apply to the administration of the refusal warnings given in such a scenario. ***363 Accordingly, the results of the breath test should not have been suppressed.
For those reasons, I dissent.
Judges Rivera, Wilson and Feinman concur, Judge Wilson in a concurring opinion. Chief Judge DiFiore dissents in an opinion in which Judges Fahey and Garcia concur.
Order affirmed.

The police officer's administration of the refusal warnings, defendant's consent to take the breath test, and the administration of the test were recorded on videotape and admitted into evidence.

Under Vehicle and Traffic Law § 1195,
"[a] defendant who has been compelled to submit to a chemical test pursuant to the provisions of subdivision three of section [1194] of this article may move for the suppression of such evidence in accordance with article seven hundred ten of the criminal procedure law on the grounds that the order was obtained and the test administered in violation of the provisions of such subdivision or any other applicable law" (Vehicle and Traffic Law § 1195[3] [emphasis added]; see CPL 710.20[5] ).
In this case, there was no subdivision three compulsory test, to wit a court order.

The refusal warnings at issue in this case were meant to warn motorists of the consequences of refusing chemical tests. The effect of the majority's rule is to accelerate an already growing and alarming rate of refusals as they are without consequence, thus frustrating drunk driving prosecutions and fundamentally undermining the very purpose of the statute (see Namuswe et al., Breath Test Refusal Rates in the United States at 3 [DOT-HS-811-881 2014]; Birchfield, --- U.S. ----, 136 S.Ct. at 2169-2170 ). Further, contrary to the majority's assertion, the legislature intended section 1194 to compel evidence of drunk driving, rather than provide "protections" (see majority op. at 353, 78 N.Y.S.3d at 259, 102 N.E.3d at 1040-41) to motorists to avoid taking a breath test (see People v. Thomas, 46 N.Y.2d 100, 108, 412 N.Y.S.2d 845, 385 N.E.2d 584 [1978], appeal dismissed 444 U.S. 891, 100 S.Ct. 197, 62 L.Ed.2d 127 [1979] ["Submission to the test, not its evasion, was what was desired ... by the Legislature in the enactment of section 1194"] ). Our decision is not a "judicial fiat" but a construction of the statute based on the consideration of the mischief sought to be remedied by the law (see McKinney's Cons Laws of NY, Book 1, Statutes § 95), a remedy that fails when evidence lawfully obtained is suppressed for no logical reason.

The two-hour rule exists on a sliding scale as it commences only at the time of arrest, which requires the police to take defendant into custody at some juncture.

Relatedly, we have understood the impracticality of strict compliance with the statute. For example, in People v. Goodell, 79 N.Y.2d 869, 581 N.Y.S.2d 157, 589 N.E.2d 380 (1992), we held that although the language of the statute provides that the chemical test to an unconscious motorist be administered within two hours after the motorist has been placed under arrest, to formally place an unconscious person under arrest would be "an empty gesture" (id. at 871, 581 N.Y.S.2d 157, 589 N.E.2d 380 ).

The majority makes much of the word "such" in referring to chemical tests in section 1194(2)(f), arguing that this must incorporate the two-hour rule across the statute because it refers to "chemical test" as listed in section 1194(2)(a) (see majority op. at 351-352, 78 N.Y.S.3d at 257-59, 102 N.E.3d at 1039-40). However, if the statute is truly to be read in a holistic way, giving purpose to the individual provisions and respect to the desired scheme of the legislature, then "such chemical test" cannot have the effect the majority suggests (see McKinney's Cons Laws of NY, Book 1, Statutes § 92, Comment at 82; id. § 95, Comment at 47-48, 54; id. § 148, Comment at 50; id. § 254, Comment at 23). After all, section 1194(3) also contains the phrase "such chemical tests," but we have previously determined the two-hour rule inapplicable to compulsory court orders (see People v. McGrath, 73 N.Y.2d 826, 826, 537 N.Y.S.2d 480, 534 N.E.2d 318 (1988) ). Instead, "such chemical tests" refers to the types of chemical tests specifically enumerated in section 1194(2)(a) (i.e. breath, blood, urine, or saliva). Interpreting "such" to incorporate only the definition of "chemical tests," not the two-hour rule, harmonizes the statute while also fulfilling its legislative purpose (see Oden v. Chemung County Indus. Dev. Agency, 87 N.Y.2d 81, 87, 637 N.Y.S.2d 670, 661 N.E.2d 142 [1995] ["use of the term 'such' ... serves as a grammatical echo for its immediate antecedent"] ).

There is no "fundamental flaw" in this reasoning and any confusion lies with the majority (see majority op. at 350 n. 2, 78 N.Y.S.3d at 257 n. 2, 102 N.E.3d at 1039 n. 2). In short, the majority misunderstands the meaning of "consent" in "deemed consent." "Deemed consent" is not consent in the traditional sense at all-rather it is a "demand" to submit (see Interim Rep of N.Y. St Legis Comm on Motor Veh Problems, 1953 N.Y. Legis Doc No 25 at 35). Under a traditional consent analysis, voluntariness is both required and evaluated, which is our distinction when using the term "expressed consent" as opposed to one that is "deemed" (see Kates, 53 N.Y.2d at 594, 444 N.Y.S.2d 446, 428 N.E.2d 852 ). The majority makes its misunderstanding over this basic point clear by divorcing "express" consent from "voluntariness," but traditional-expressed-consent always requires voluntariness (see Gonzalez, 39 N.Y.2d at 124, 383 N.Y.S.2d 215, 347 N.E.2d 575 [1976] ). Because Birchfield now allows for warrantless breath tests as a search-incident to arrest under the Fourth Amendment, traditional consent is no longer a factor-and that is why the majority's focus on voluntary consent is somewhat academic (see--- U.S. at ----, 136 S.Ct. at 2185 ).