People v Moore (2018 NY Slip Op 04042)





People v Moore


2018 NY Slip Op 04042


Decided on June 7, 2018


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: June 7, 2018

109854

[*1]THE PEOPLE OF THE STATE OF NEW YORK, Appellant,
v
IVAN MOORE, Respondent.

Calendar Date: April 27, 2018

Before: McCarthy, J.P., Egan Jr., Devine, Mulvey and Rumsey, JJ.


P. David Soares, District Attorney, Albany (Vincent Stark of counsel), for appellant.
Sherri J. Brooks, Alternate Public Defender, Albany (Francisco Calderon of counsel), for respondent.


McCarthy, J.P.

MEMORANDUM AND ORDER
Appeal from an order of the County Court of Albany County (Carter, J.), entered August 15, 2017, which granted defendant's motion to suppress evidence.
While the victim was delivering pizza, defendant allegedly stole money from him at gunpoint. After the police determined that defendant's phone number was used to order the pizza, the victim identified defendant from a photo array. A few weeks later, the police stopped defendant outside of his place of employment, explained that he was the subject of an investigation and asked if he would accompany them back to the station to answer questions. Defendant agreed and they transported him to the station. Once there, a detective administered Miranda
warnings and defendant engaged in a videotaped interrogation. Defendant was charged with robbery in the second degree and grand larceny in the fourth degree. At his arraignment, the People advised defendant that they intended to offer statements from, and provided him a DVD of, his interrogation. Defendant moved to suppress certain evidence. Following a combined Huntley/Dunaway/
Wade hearing, County Court concluded that the police had probable cause to arrest defendant. It denied suppression of the victim's identification of defendant through the photo array, but suppressed defendant's statements, as well as "any information gleaned from [his] phone." The People appeal.
Contrary to defendant's argument, the People's appeal is properly before us. Pursuant to [*2]statute, the People may appeal an order granting a suppression motion so long as they certify that the deprivation of the suppressed evidence has rendered their evidence "so weak in its entirety that any reasonable possibility of prosecuting such charge to a conviction has been effectively destroyed" (CPL 450.50 [1]; see CPL 450.20 [8]). The People are not required to justify or substantiate their evaluation of the remaining evidence, especially considering that, once they make such a certification, they are not permitted to go forward with the prosecution unless they are successful on the appeal (see CPL 450.50 [2]; People v Kates, 53 NY2d 591, 597 [1981]).
County Court erred in suppressing evidence derived from defendant's cell phone. If a defendant desires to have certain evidence suppressed, he or she must submit a written motion containing the legal grounds and sworn factual allegations supporting the request (see CPL 710.60 [1]; People v Mendoza, 82 NY2d 415, 421 [1993]). Defendant never moved to suppress any evidence that the police obtained from his cell phone. We may not rely on the record from the combined Huntley/Dunaway/Wade hearing to address the merits of a suppression issue that was never the basis of a motion (see People v Fountaine, 269 AD2d 748, 748 [2000], lv denied 94 NY2d 947 [2000]). Indeed, to do so would be unfair to the People because they were not on notice that the issue would be raised at the hearing and, therefore, did not have an opportunity to present evidence addressing questions that the court raised in its decision. Those topics include when the police took defendant's cell phone, any conversations between the detectives and defendant regarding that alleged seizure, any policy on suspects bringing cell phones into the interview room and whether the police searched the phone before they brought it into the room and obtained defendant's consent (see People v Giles, 73 NY2d 666, 671 [1989]). Inasmuch as defendant never moved for suppression of evidence gleaned from his cell phone, and the People were not given fair notice and an opportunity to present proof on the issue, the court should not have suppressed such evidence.
County Court erred in suppressing defendant's statements to the police. "The Miranda rule protects the privilege against self-incrimination and, because the privilege applies only when an accused is compelled to testify, the safeguards required by Miranda are not triggered unless a suspect is subject to custodial interrogation" (People v Paulman, 5 NY3d 122, 129 [2005] [internal quotation marks and citation omitted]). "The standard for assessing a suspect's custodial status is whether a reasonable person innocent of any wrongdoing would have believed that he or she was not free to leave" (id. at 129 [citations omitted]; see People v Yukl, 25 NY2d 585, 589 [1969], cert denied 400 US 851 [1970]; People v Planty, 155 AD3d 1130, 1133 [2017], lv denied 30 NY3d 1118 [2018]). A court evaluating whether an individual was in custody must assess "the circumstances existing when the challenged statements were made, considering such factors as the location, length and atmosphere of the questioning, whether police significantly restricted defendant's freedom of action, the degree of defendant's cooperation, and whether the questioning was accusatory or investigatory" (People v Henry, 114 AD3d 1025, 1026 [2014] [internal quotation marks and citation omitted], lv dismissed 22 NY3d 1199 [2014]; see People v Planty, 155 AD3d at 1133). The People bear the burden of proving, beyond a reasonable doubt, that a defendant's statements to police were voluntary (see People v Guilford, 21 NY3d 205, 208 [2013]; People v Robinson, 156 AD3d 1123, 1130 [2017], lv denied 30 NY3d 1119 [2018]).
After a Miranda warning is administered, the voluntariness of a statement is determined by examining the totality of the circumstances under which it was obtained (see People v Robinson, 156 AD3d at 1130; People v Steigler, 152 AD3d 1083, 1083 [2017], lv denied 30 NY3d 983 [2017]). Where "Miranda warnings have been timely given . . . the requisite inference of voluntariness may be relatively easily drawn" (People v Guilford, 21 NY3d at 208). "Factual determinations of the suppression court are entitled to great weight and will not be overturned unless clearly contrary to the evidence" (People v Muniz, 12 AD3d 937, 938 [2004] [citations [*3]omitted]; accord People v Weishaupt, 118 AD3d 1100, 1102 [2014]).
Here, the detectives approached defendant outside his place of employment and asked him to accompany them to the police station. Defendant voluntarily agreed and they drove him to the station without placing him in handcuffs. The videotaped statement indicates that, during the ride and before entering the interview room, they engaged in general conversation regarding defendant's background, education, employment and family life, but did not discuss the criminal investigation. Inside the interview room, defendant was initially not restrained. The detectives asked if he would like water and provided him a drink. Later, they obtained a cigarette and allowed him to smoke it, and permitted him to make a phone call. At the beginning of the conversation in the interview room, a detective administered Miranda warnings and defendant stated that he was willing to talk to them and answer questions. Defendant was not threatened or coerced during the interview.
County Court did not rely on these facts, but instead focused on what it deemed "the troubling and unavoidable issue that, prior to entering the interview room and prior to Miranda warnings, . . . defendant's phone had already been seized by the police." The court highlighted the People's failure at the hearing to address this seizure of the phone even though, as discussed above, the People were not on notice that anything related to the phone was being challenged by defendant. The court chastised the People for failing to acknowledge or explain "the circumstances under which . . . defendant's phone was seized and potentially searched, pre-Miranda." The record contains no factual support for, and actually belies, the court's speculative assertion that the phone was searched before Miranda warnings were administered, because the video shows that, when the detective eventually brought the phone into the interview room and obtained defendant's consent to look at some of its features, defendant had to unlock the phone with either a password or swiping pattern.
County Court further indicated that there was likely some conversation between defendant and the police at the time his phone was seized, and expressed concern that the substance of this alleged conversation was not revealed. According to the court, this information was essential to the suppression determination as it bears directly on voluntariness of defendant's statements and whether he was in custody. The court's comment concerning such alleged conversation was pure conjecture. The video contains an explanation for why defendant did not have his phone; when defendant was looking for his phone, the detective stated that it was outside because there is a policy of no phones in the interview room. Although it is unclear when the police obtained possession of defendant's phone, the way that defendant was looking through his coat and pockets — in the interview room several minutes after receiving his Miranda warnings — indicates that he was unaware that he did not have his phone at that time. Regardless of whether the police accurately explained the alleged phone policy, it is unlikely that a reasonable person would feel that he or she was not free to leave based on the police holding his or her cell phone outside the room, especially if the person did not even know that the police had obtained possession of the phone. For the same reason, the record does not support the court's suggestion that some conversation ensued when the police seized the phone. Even if a conversation did ensue regarding turning over the phone, there is no indication that such conversation constituted interrogation.
The information contained in the record supports a finding that defendant was not in custody when he arrived at the police station, he was informed of and voluntarily waived his Miranda rights before any interrogation began and his statements given thereafter were voluntary. Accordingly, defendant's suppression motion should have been denied in its entirety.
Egan Jr., Devine, Mulvey and Rumsey, JJ., concur.
ORDERED that the order is modified, on the law and the facts, by reversing so much thereof as suppressed defendant's statements to police and information gleaned from his phone; motion denied to said extent; and, as so modified, affirmed.